IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:21-cv-24023-RNS

MARIA EUGENIA BLANCO,

      Plaintiff,

v.

ANAND ADRIAN SAMUEL and
LINDSEY ADAMS FINCH,

      Defendants.

_____/

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR JUDGMENT UNDER FED. R. CIV. P. 56(f)(1)

Defendants ANAND ADRIAN SAMUEL and LINDSEY ADAMS FINCH (hereinafter "Defendants"), by and through their undersigned counsel hereby file this Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("PMSJ") [D.E. 45], filed by Plaintiff, MARIA EUGENIA BLANCO ("Plaintiff"). In addition, as explained *infra*, Defendants request that judgment be entered against Plaintiff in accordance with Fed. R. Civ. P. 56(f)(1).

## I.    SUMMARY OF ARGUMENT

Ms. Blanco is exempt from overtime as a "live-in domestic service employee" who "resides" for "extended periods of time" in the household where she is employed. Ms. Blanco worked and slept in the Samuel-Finch household five consecutive work nights and is therefore exempt from the FLSA's overtime requirements. This is a complete defense and renders all other issues moot. This conclusion can rest solely on Plaintiff's Statements of Material Facts ("PSMF").

Defendants easily satisfy all three requirements for the live-in domestic service overtime exemption provided under 29 U.S.C. § 213(b)(21). That exemption applies to (a) "any employee who is employed in domestic service," (b) "in a household, and (c) who "resides in such household." One resides in a household, for purposes of the exemption, among other ways, by working and sleeping at the household for five consecutive nights.

According to PMSF ¶ 58, Plaintiff worked and slept at the Finch/Samuel family home five consecutive nights (from "Sunday 10 am to 7 pm, and Sunday – Friday 7 pm to 9 am for a total of 79 hours weekly.")  In addition, PMSF, ¶ 7 states that "during the night shift, the plaintiff stayed in a room with the two youngest of Defendants' children. Plaintiff always slept with the Defendants' two youngest daughters."

Under Department of Labor ("DOL") regulations and interpretive guidance, to satisfy the exemption, one must "resides in" a household either permanently, or for an "extended period of time."  The DOL defines an "extended period of time" to include where one works and sleeps in the residence for five consecutive nights.

Therefore, Plaintiff worked and slept at the Samuel family home for five consecutive nights each week and is exempt from the FLSA's overtime requirements under DOL regulations and interpretive guidelines.  Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60,474 (Oct. 1, 2013).  The necessary factual preconditions are found in Plaintiff's Statement of Material Facts.

Plaintiff argues that the exemption has a "surprise" fourth requirement for employers to provide a private bedroom and bathroom that admittedly has not been met. Plaintiff ignores the statute, the Department of Labor ("DOL") Wage and Hour Division's ("WHD") authoritative interpretation of "reside" and case law upholding this interpretation – all establishing clearly that there is no fourth requirement for a private bedroom and bathroom, or any other additional requirements.  There is no contrary authority that has survived appeal.

Plaintiff argues that additional elements, such a private bedroom and bathroom, are required for the exemption. Plaintiff confuses the requirements for the Section 213(b)(21) exemption, with the requirements for the exclusion of sleep time from the calculation of hours worked provided under 29 C.F.R. § 785.23. Private quarters in a homelike environment is required only for excluding sleep time from the calculation of hours worked under Section 785.23 based on guidance DOL WHD provided in the context of group homes.  All authority reject any effort to borrow those additional requirements for purposes of the Section 213(b)(21) exemption.

The applicability of the live-in exemption in this case is easy to resolve on summary judgement and Plaintiff has asked the Court to resolve it. There are no disputed issues of material fact with regard to the exemption, and the dispute mainly hinges on whether a lack of a private bedroom and bathroom defeats the exemption. Based on Plaintiff's representations in her PMSF,

Defendants request entry of judgment in their favor pursuant to Fed. R. Civ. P. 56(f)(1) ("Judgment Independent of the Motion: After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant.").

Substantial competent evidence establishes that Defendants lacked the requisite control over the nannies and the agency that employed them to preclude summary judgment.  The DOL provides a four-factor test to establish whether there is joint employer liability: whether the individual (1) hires or fires the employee; (2) supervises and controls the employee's work schedule or conditions of employment to a substantial degree; (3) determines the employee's rate and method of payment; and (4) maintains the employee's employment records (although joint employer liability cannot be based exclusively on maintenance of employee records).  No single factor is dispositive in determining joint employer status.  Joint employer liability turns on how all the facts in a particular case relate to these factors and establish control over the particular employment at issue.  Often, the issue is not amenable to summary disposition where, as here, the underlying factors themselves are disputed.

Further, summary judgment should be denied on the issue of liquidated damages.  Based on Defendants' research on the DOL Wage and Hour Division website before Plaintiff was hired as a live-in nanny, Defendants were, in good faith, of the subjective opinion that Ms. Blanco was overtime exempt. All the objective requirements for the exemption were met. There is no suggestion of any willfulness in the record with regard to Plaintiff's employment as a live-in nanny. The good faith defense is deemed met where, as here, the employer's act or omission complained of was taken in good faith and was in conformity with and in reliance on a written administrative interpretation promulgated by the DOL.  Further, numerous courts have held that entering summary judgment on the issue of liquidated damages is premature where, as here, there has been no finding of liability.

Last, for all but eight weeks in the relevant period, Plaintiff was employed by Amazing Gracie LLC. Defendant Finch was not present to act as the employer. She retained the firm of Amazing Gracie LLC to perform that function. Dr. Finch did not direct who among the nannies appeared at any particular time. Except for one brief period when she directly employed Plaintiff, Dr. Finch outsourced all aspects of the nannie operation including scheduling, payroll and regulatory compliance.  Dr. Finch did not maintain employment records for the nannies.  Dr. Finch did not control or supervise Plaintiff when she was employed by Amazing Gracie LLC.

3

Similarly, Defendant Samuel did not direct Ms. Blanco's comings and goings, did not set or modify her work schedule, and did not direct the discharge of Ms. Blanco's work duties. He could not have done so easily as he and Ms. Blanco do not speak the same language. Mr. Samuel did not hire, fire, or pay Ms. Blanco or any of the other nannies. His knowledge of the terms of Ms. Blanco's employment was acquired only after he was sued and after Ms. Blanco's employment ceased. Defendant Samuel had no operational control over, and knew little about, Ms. Blanco's employer, Amazing Gracie, LLC. He did not maintain employment records for the nannies.

In sum, there exists substantial disputes of material fact that would preclude entry of summary judgment on the issue of joint employer liability.

## II.    BACKGROUND

The Defendants are Anand Samuel and Dr. Lindsey Finch. Both Defendants attended law school in Boston and previously practiced law for a few years. They are members of the New York State Bar but no longer practice law.

Mr. Samuel is an investment analyst. [DSMF, ¶ 81].[1] After leaving legal practice, Dr. Finch graduated from the University of Miami Medical School in 2019, and she is currently a third-year obstetrics and gynecology resident at Jackson Memorial Hospital. [DSMF, ¶ 82]. Ms. Blanco began working as one among several nannies taking care of Defendants' children in 2018. [DSMF, ¶ 83]. Ms. Blanco's employment ended in August 2021. [DSMF, ¶ 83]. At the time Ms. Blanco worked in Defendants' household, Defendants had four children (they now have five). [DSMF, ¶ 84]. Initially, Ms. Blanco worked one day per week – Sunday, from 10:00 p.m. to 7:00 a.m.. [DSMF, ¶ 96]. On January 21, 2019, the live-in nanny who worked the five consecutive night schedule, Shane Tompkins, was killed and her shifts were given to Ms. Blanco. [PSMF, ¶ 57] During the relevant period, Ms. Blanco's new schedule was 10 a.m. Sunday to 9 a.m. Monday, and Monday through Thursday, 7 p.m. to 9.a.m., for a total of 79 hours per week. [PSMF, ¶ 58]. There is no dispute about this.

Defendants' residence has three bedrooms. [PSMF, ¶ 5]. Ms. Blanco had her own bed but shared a bedroom with the two youngest children and shared a bathroom with all of the children.

---

[1] Defendants' Statement of Material Facts ("DSMF"), filed simultaneously with this Response.

[PSMF, ¶ 6]. Again, this is undisputed.

Ms. Blanco was employed and paid through an agency operated by one of the other nannies. [DSMF, ¶ 71, 72]. Grace Trask (another nanny) operates Amazing Gracie, LLC.[2] [DSMF, ¶ 67]. Amazing Gracie, in turn, paid all the nannies, including Ms. Trask. [DSMF, ¶ 71]. This arrangement was put together shortly after the untimely death of Ms. Tompkins. [DSMF, ¶ 98]. However, the situation was unanticipated, and the arrangement took time to assemble. [DSMF, ¶ 98]. Dr. Finch paid the nannies herself for several weeks before delegating the responsibility to Amazing Gracie. [DSMF, ¶ 98]. Dr. Finch was careful to do everything above board.  No payments were made under the table. [DSMF, ¶ 99]. Dr. Finch wanted to use an agency to deal with tax withholdings and other compliance matters. [DSMF, ¶ 99].

There is no claim for overtime prior to January 2019, or after August 2021 when Ms. Blanco stopped showing up for work.  There is no claim for minimum wage and Ms. Blanco was paid $880 a week ($45,760 per year) for the 79 hours she was on the premises each week, well above minimum wage. Ms. Blanco never asked for overtime during the relevant period, and never complained she could not sleep. [DSMF, ¶ 115].

## III.   ARGUMENT

### A.   Summary Judgment Standard

A motion for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). ). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247–248 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

---

[2] Prior to her working full time at defendants' residence, Ms. Blanco she was employed and paid by a different agency, Nannies With Love, LLC.

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Courts "must 'view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party,'" *Maniccia v. Brown*, 171 F.3d 1364, 1367 (11th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)), and "resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. v. Sun Life Ins. Co.*, 894 F.2d 1555, 1558 (11th Cir. 1990). "If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296–97 (11th Cir. 1983).

> **B.    Plaintiff is Exempt from Overtime Pay Requirements Under the Exemption for Live-in Domestic Workers**

As explained below, there are three elements to the live-in exemption from the FLSA's overtime provisions for domestic employees.  The employee must be employed (1) in domestic service, (2) in a private home, and (3) must reside on the premises permanently or "for extended periods of time."  The elements are straight forward and easily met in this case.

In her Motion for Summary Judgment [D.E. 45] and corresponding Statement of Material Facts [D.E. 47], Plaintiff concedes the first two elements.  As to the third element, Plaintiff concedes the underlying facts that would ensure that the third element is also satisfied.  In sum, Plaintiff is overtime exempt under 29 U.S.C. 213(b)(21) based on her own admissions. Specifically, Plaintiff concedes that:

- She "worked from 2019 through 2021 as a full-time nanny/housekeeper for the Defendants." [PSMF, ¶ 1];

- Her "schedule during the relevant time period was Sunday 10 a.m. to 7 p.m. and Sunday-Friday 7 p.m. to 9 a.m. for a total of 79 hours weekly." [PSMF, ¶ 58].

- "During the night shift, the Plaintiff stayed in a room with the two youngest of the Defendants' children. Plaintiff always slept with the Defendants' 2 youngest daughters at

the Froude home.[3] At the Harbor House condo,[4] Plaintiff slept in a room with all of the Defendants['] children." [PSMF, ¶ 7].

Plaintiff cannot evade the representations set forth in her Statement of Material Facts, such as to say she never slept. Local Rule 56.1(c) (S.D. Fla) provides that:

> All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply.

### 1. Defendants request judgment under Fed. R. Civ. P. 56(f)(1)

Based on Plaintiff's representations made in her Statement of Material Facts, Defendants request judgment pursuant to Fed. R. Civ. P. 56(f)(1) ("Judgment Independent of the Motion: After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant"). § 2720.1 Procedure on a Motion for Summary Judgment—Summary Judgment Without a Motion, 10A Fed. Prac. & Proc. Civ. § 2720.1 (4th ed.) provides:

> [T]he rule makers in the 2010 revision of Rule 56 added a new subdivision (f) explicitly providing that after notice and a reasonable time to respond, the court may grant summary judgment for a nonmovant
> . . .
> The weight of authority [prior to the 2010 revisions to FRCP 56], is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.
> . . .
> And now Rule 56(f) corrects the earlier omission and formally authorizes the court to grant summary judgment for a nonmovant in appropriate cases.

Numerous decisions support this view. *See e.g., Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 212 F. Supp. 3d 1286, 1291 (S.D. Fla. 2016) ("When a motion for summary judgment is presented to the Court, it opens the entire record for consideration, and the Court may enter judgment in favor of the non-moving party on any grounds apparent in the record, even where there is no formal cross-motion.") (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999) ("[S]o long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted,

---

[3] The "Froude home" refers to Defendants' current residence at 9132 Froude Avenue, Surfside, Florida.

[4] The "Harbor House Condo" refers to Defendants' prior residence in Bal Harbour, Florida.

7

then granting summary judgment sua sponte is entirely appropriate.")); *Dressler v. Jenne*, 87 F. Supp. 2d 1308, 1322–23 (S.D. Fla. 2000) (District court has power to award summary judgment against the party that itself has moved for summary judgment provided adequate notice is provided that the party must bring forth all its evidence).[5]

### 2. FLSA exemptions should be interpreted fairly and are to be construed narrowly

Plaintiff relies upon several appellate court decisions which hold that courts are to construe FLSA exemptions narrowly. [*See* PMSJ, pp. 9, 13].  All of these cases are now bad law, having been overruled by the Supreme Court's decision in *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018), which explicitly rejected that principle.

> Because the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give them anything other than a fair (rather than a "narrow") interpretation.  …  Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement.

138 S. Ct. at 1142 (2018)  (citations and internal quotations omitted); *see also Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1359 (11th Cir. 2021) ("[T]he Supreme Court recently corrected course and held that the exemptions from the [FLSA] should be interpreted fairly, not narrowly.") (citing *Encino Motorcars*).  Plaintiff oddly mentions *Encino Motorcars* but fails to indicate that it overrules numerous cases on which she relies.

### 3. Because Plaintiff worked as a nanny and slept at the Defendants residence five consecutive nights each week, she is deemed a "live-in" domestic employee for purposes of the overtime exemption

The requirements for the live-in exemption are found in *Application of the Fair Labor Standards Act to Domestic Service*, 78 Fed. Reg. 60454-01, 2013 WL 5428279 (October 1, 2013):

> [T]he Department did not propose any changes to the definition of live-in domestic service employee or otherwise discuss the requirements for meeting the live-in

---

[5]  *cf. Lance Toland v. Phoenix Ins. Co.*, 20-10999, 2021 WL 1200263 (11th Cir. Mar. 30, 2021) (Under Federal Rule of Civil Procedure 56(f)(3), a district court may grant summary judgment sua sponte "after giving [the parties] notice and a reasonable time to respond."); *see also Hartford Fire Ins. Co. v. Trynex, Inc.*, 2013 WL 12183610, at *1 (E.D. Mich.) ("If, after a review of the papers filed in this case and the hearing on this matter, the Court determines that the . . . Defendants are entitled to summary judgment, the Court would exercise its right under Rule 56(f)(1) to grant summary judgment to a nonmoving party. The Court hereby puts Plaintiffs on notice of this.")

domestic service exemption in the NPRM. It is the Department's intention to continue to apply its existing definition of live-in domestic service employees.

Under the Department's existing regulations and interpretations, an employee will be considered to be a live-in domestic service employee under § 552.102 if the employee: (1) Meets the definition of domestic service employment under § 552.3 and provides services in a ''private home'' pursuant to § 552.101; and (2) resides on his or her employer's premises on a ''permanent basis'' or for ''extended periods of time.'' See also § 785.23; FOH § 31b20.

[E]mployees who work and sleep on the employer's premises for five days a week (120 hours or more) are considered to reside on the employer's premises for "extended periods of time." If less than 120 hours per week is spent working and sleeping on the employer's premises, **five consecutive days or nights** would also qualify as residing on the premises for extended periods of time. For example, employees who reside on the employer's premises five consecutive days from 9:00 a.m. Monday until 5:00 p.m. Friday (sleeping four straight nights on the premises) would be considered to reside on the employer's premises for an extended period of time. Similarly, employees who reside on an employer's premises five consecutive nights from 9:00 p.m. Monday until 9:00 a.m. Saturday would also be considered to reside on their employer's premises for an extended period of time.

78 Fed. Reg. at 60474 (citations omitted, emphasis added).[6]

This above-stated rule with three requirements has been adopted by federal courts in this district for purposes of the Section 213(b)(21) overtime exemption for live-in domestic workers. *See Quintero v. Lopez*, 2016 WL 7508264, at *6 (S.D. Fla.) (quoting 78 Fed. Reg. 60474); *Romero v. Diaz-Fox*, 2021 WL 3619677, at *5 (S.D. Fla. Aug. 16, 2021) (same). *See also Kefeenie v. Gloria Martin Tr.*, 2018 WL 4301558, at *8 (S.D. Fla.) (citing 78 Fed. Reg. 60474 to hold that because plaintiff slept in employer's residence for at least five (5) days per week, plaintiff was a live-in domestic service employee exempt from overtime pay).

Interpretive guidelines issued by the Department of Labor, Wage and Hours Division, Administrative Interpretation No. 2014-1 (attached as Exh. "1"), reinforces this rule:

A live-in domestic service employee is one who resides in the private home of the person receiving services. 29 C.F.R. § 552.102. For this purpose, "reside" means to live in the home on a "permanent basis," i.e., to stay there seven nights a week and have no other home, or for "extended periods of time," i.e., to work and sleep there for five days a week (120 hours or more) or five consecutive days or nights (regardless of the total number of hours).

---

[6] Interpretations of the Department of Labor, when published as part of the Final Regulation in the Federal Register after notice and comment are entitled to deference under *Kisor v. Wilkie*, 139 S. Ct. 2400, 2422 (2019).

*Id.*, § II(3)(b) (citing 78 Fed. Reg. 60,474).  Footnote 18 is particularly on point:

> [A] provider who spends Sunday through Thursday nights in the consumer's home but spends the weekend at the home of a family member where she has a bedroom does not live permanently with the consumer but does, because she sleeps at the consumer's home for five consecutive nights each week, live with the consumer for extended periods of time.

This is as close to Ms. Blanco's situation as is imaginable.

With regard to the live-in domestic employee overtime exemption, courts (even before *Encino Motorcars*) have resisted efforts impose requirements beyond those set by the DOL.  As the Supreme Court held when construing the FLSA in *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607 (1944):

> The details with which the exemptions in this Act have been made preclude their enlargement by implication.  While the judicial function in construing legislation is not a mechanical process from which judgment is excluded, it is nevertheless very different from the legislative function.  Construction is not legislation, and must avoid "that retrospective expansion of meaning which properly deserves the stigma of judicial legislation."

322 U.S. at 618 (quoting *Kirschbaum Co. v. Walling*, 316 U. S. 517, 522 (1942)).

In fact, as explained below, the Second Circuit overruled a district court decision for doing precisely what Plaintiff asks this court to do here – adding a fourth "private quarters and home-like environment" requirement to the Section 213(b)(21) exemption.

Plaintiff does not dispute that all three requirements for live exemption as described above are met.  Instead, Plaintiff contends that Defendants are disqualified from the exemption because Plaintiff was not provided private quarters, a separate room, or a home-like environment. [*See* PMSJ, pp. 6-17].  The thrust of Plaintiff's argument is that she "did not 'live-in' with the Defendants and was not provided a separate room to pursue her own personal matters for any of the relevant time period." [PMSJ, p. 7]. This view has no support or authority, and confuses the requirements for the 213(b)(21) live-in exemption and the "private quarters in a homelike environment" requirement under 785.23 to exclude sleep time from the calculation of hours worked.

Whether a domestic employee resides in the household where he or she works is relevant to two unrelated issues under the FLSA: (a) whether time spent sleeping can, by agreement, be excluded from hours worked for purposes of calculating minimum wage and overtime compensation, *see* 29 C.F.R. § 785.23, and (b) whether the employee is exempt from the FLSA's

10

overtime provisions, *see* 213(b)(21) and 29 C.F.R. § 552.102.  (For purposes herein, the first issue is termed the "sleep time exclusion" issue and the second issue is termed the "exemption issue").  In short, Plaintiff imports precedent and regulatory language from sleep time exclusion cases and related authority and misapplies that law in this exemption case.  This analytical error suffuses Plaintiff's entire summary judgment brief as it pertains to the exemption issue.  Other plaintiffs have tried to expand the definition of "to reside" in Section 213(b)(21) beyond working and sleeping at least five consecutive days or nights, but courts have rejected that invitation.

In *Canizales v. Lawrence*, 2009 WL 10719452, at *17 (S.D. Tex.) – a case relied on by Plaintiff –, the employee argued that the Section 213(b)(21) exemption was intended for persons who exercised the rights of a tenant (rights the plaintiff did not have).  He maintained that he did not have one of the principal benefits of a "home-like environment" – the right to receive family and friends.  The plaintiff cited the Opinion Letter from Dept. of Labor, Wage and Hour Division, WH-505 (February 3, 1981), 1981 WL 179033 [hereinafter the "1981 DOL Opinion Letter"]) – the same DOL Opinion letter relied upon by Ms. Blanco.  The *Canizales* Court rejected that argument:

> Citing the aforementioned 1981 DOL opinion letter, courts have noted that an employee only resides on the employer's premises if the environment is "home-like."  . . . Notwithstanding that citation, the Court notes that the DOL issued these statements for guidance on calculating the number of hours a group home employee worked, per 29 C.F.R. § 785.23. The DOL's statements were not issued for guidance on determining whether an employee is exempt under the FLSA.

*Canizales*, 2009 WL 10719452, at *17.  Plaintiff is making the same mistake as the plaintiff did in *Canizales*.  As stated, Plaintiff oddly cites *Canizales* even though the case clearly undercuts her position.

The Second Circuit reached a similar conclusion in *United States v. Sabhnani*, 599 F.3d 215, 257 (2d Cir. 2010).  In *Sabhnani*, the employer was convicted of holding two persons – Samirah and Enung -- in a condition of peonage.   In describing the environment of this "employment", the Second Circuit observed that

> The circumstances of Samirah's employment were more than severe. While at the Sabhnanis' home, Samirah, . . . was required to sleep first on the carpet outside the bedroom of one of the children and then on a mat on the floor of one of the residence's kitchens. Samirah was not given adequate food to eat—to the point that she was often forced by hunger to eat from the garbage. She worked for extremely long hours per day and was often deprived of sleep.

599 F.3d at 225 (2d Cir. 2010).  The court noted that Samirah was not given adequate clothing to wear and was subjected to harsh physical treatment.

Enung similarly was required to work from before dawn until late in the evening and was denied food, sleep, and medical care when sick or injured.  She too was physically assaulted and subjected to harsh punishment and abuse.  In sum, Samirah and Enung were not provided a "home-like environment" by anyone's definition.

In *Sabhnani*, for purposes of determining restitution, it was necessary to determine whether the overtime exemption under Section 213(b)(21) was applicable.[7]  The government argued that the exemption did not apply because the domestic servants at issue did not "reside" with the employer because the employer "failed to provide, among other things, appropriate living quarters, adequate sleeping facilities and adequate meals."  *See* 599 F.3d. at 255.  It was undisputed that Samirah and Enung were "employed in domestic service in a household" under 29 U.S.C. § 213(b)(21); the only question was whether they were employees who "resided" in the Sabhnanis' home.  Just like Ms. Blanco does here, the United States relied on the above-cited 1981 DOL Opinion Letter and argued that the employees were not provided with "a home-like environment with private quarters" and hence the Section 23(b)(21) overtime exemption was inapplicable.

Although that premise was not in dispute, the Second Circuit nonetheless held that the domestic workers were exempt under Section 213(b)(21).  The court reasoned as follows:

> Nothing about the [1981 DOL] Opinion Letter, however, suggests that it was an interpretation of what it means to "reside in [a] household" for purposes of § 213(b)(21). Indeed, it is clear in context that the letter is attempting to answer an entirely different question from the one posed by this case . . . . [The 1981 DOL Opinion Letter] does [not] purport to suggest, at least with regard to domestic service, that it is only when an employee has private quarters separate and apart from the area where he or she works that this employee should be regarded as residing at the employer's premises—a circumstance that, in any event, provides a somewhat arbitrary basis for distinguishing among domestic workers who live in their employers' homes and who argue that they are entitled to overtime pay. The [1981 DOL] Opinion Letter thus gives us no cause to doubt our interpretation of § 213(b)(21). For the same reasons, we find the cases relied on by the government that apply the Opinion Letter (again to facts not similar to those in this case) inapposite.

---

[7] The restitution statute – 18 U.S.C. § 1593(b)(3) -- defines the "full amount of the victim's losses," in pertinent part, as "the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 et seq.)."

*Sabhnani*, 599 F.3d at 257.  Plaintiff relies upon the district court's opinion in *Sabhnani*. *See* PMSJ, p. 13.  As stated, the Second Circuit decision reversed the district court's holding relied upon by Plaintiff in this case.   For purposes of defeating the exemption under Section 213(b)(21), Plaintiff does not have facts more favorable than those the Second Circuit found to be insufficient in *Sabhnani*.

In sum, although a homelike setting which includes private quarters may be required for purposes of the sleep time exclusion rules, it is not required for purposes of the domestic worker overtime exemption.[8]  Defendants could find no cases supporting Plaintiff's contrary contention. All of the cases relied upon by Plaintiff are sleep time exclusion cases except for *Sabhnani* and *Canizales*.  Both of these cases clearly reject the position advanced by Plaintiff here, i.e., that the Section 213(b)(23) exemption has a judicially legislated fourth requirement for "private quarters in a homelike setting."  There is no authority for the proposition that the live exemption under Section 213(b)(21) requires a home-like environment or a dedicated bedroom that excludes all potential roommates.   Again, Plaintiff is borrowing law from sleep time exclusion cases and improperly using them in this exemption case.[9]

### 4.     Miscellaneous anticipated rebuttal arguments

---

[8] During the DOL's rule-making process, the Women's Employment Rights Clinic suggested that the Department adopt the following definition: "A live-in employee is one who (1) resides on the employer's premises on a permanent basis or for extended periods of time and (2) for whom the employer makes adequate lodging available seven days per week." The DOL rejected this clear request to include in its final rule a fourth "adequate lodging" requirement.  *See Application of the Fair Labor Standards Act to Domestic Service*, 78 FR 60454-01, 78,474, 2013 WL 5428279 (October 1, 2013).

[9] The DOL explicitly states that live-in roommates qualify for the live-in exemption. The word "roommate" appears 35 times in the text of the above-cited Application of the Fair Labor Standards Act to Domestic Service, Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454-01 et seq.  For example, "Community Vision . . . described live-in roommates as ''a major component of the support system of an individual with significant disabilities who live independently in their own home.'' Home Care & Hospice stated that "live-in roommate arrangements include college students with Medicaid paid 'roommates' who also attend college or individuals who work and take a caregiver to work with them, but who need an overnight live-in roommate to address intermittent needs." 78 Fed. Reg. 60475-60476.  In none of these varied situations did the DOL suggest that the presence of a roommate would cause the employee to not qualify as a "live-in" domestic employee or otherwise defeat the overtime exemption under Section 213(b)(23).

a)      *Sleep interruptions do not defeat the overtime exemption under Section 213(b)(21)*

Plaintiff contended in PMSF, ¶ 79 that she was "often up at night tending to Defendants' youngest children." There is no suggestion in the record that her sleep was interrupted by the children on anything other than infrequent basis. Again, there is no minimum requirement under the implementing regulations pertaining to the Section 213(b)(21) live-in exemption that sleep be without interruption.  Further, to the extent she claims to be awakened frequently or was unable to sleep, Plaintiff's testimony is contradicted by every other witness, including the other nannies who are non-party witnesses.  Even under the more exacting requirements for the sleep time exclusion under 29 C.F.R. 785.23, the DOL's longstanding position is that only if an employee cannot get at least five hours of sleep in a sleeping period, the entire period must be counted as hours worked. 29 C.F.R. 785.22(b); *see also* Wage & Hour Division Opinion Letter, 1993 WL 901151, at *1 (March 1, 1993). These five hours need not be continuous, but interruptions must not be so frequent as to prevent reasonable periods of sleep that accumulate to at least five hours. See Field Operations Handbook § 31b12(b); *see also*, Wage & Hour Opinion Letter, 1987 WL 1369158, at *1 (Sept. 11, 1987).  In other words, the interruptions would have to be severe and prolonged.  All the witnesses, including the other nannies testified that the children slept through the night during the relevant period. [DSMF, ¶ 79].

b)      *No separate rule for situations where sleep time is essential to the domestic worker's' job duties*

Based on informal discussion between counsel, Defendants anticipate that Plaintiff will argue that the above-stated rule is inapplicable because Plaintiff spent much of her work time (approximately half) sleeping in the same room as Defendants' children. *See* PMSJ, p. 7 ("Defendants simply do not appear to understand is that the Plaintiff's night-shift job's essential requirements involved her sleeping in a bedroom with the Defendants two youngest daughters."). Plaintiff fails to cite any law in support of the proposition that sleeping during the "night shift" is subject to a different rule and Defendants are aware of none.  This is simply another attempt to inject additional elements to the Section 213(b)(21) exemption beyond those required under the DOL's regulations.  Adding additional requirements for the exemption such as private quarters, home-like environment, or determining whether the time sleeping was "essential" to the employee's overall job duties would be a (judicially created) interpretation (without notice or

comment) that results in "unfair surprise" as to regulated parties, which the Supreme Court discussed in *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417-18 (2019). The regulated parties whose interest are implicated here would be families who hire live-in employees to work at their home, relying on DOL guidance found on its website, as opposed to a commercial enterprise with Human Resources and employment law specialists on staff. The *Kisor* Court noted "[t]hat disruption of expectations may occur when an agency substitutes one view of a rule for another. We have therefore only rarely given *Auer* deference to an agency construction "conflict[ing] with a prior" one." *Id.*

### C.    There Exists Substantial Evidence that Defendants are Not Ms. Blanco's Employer

Defendants concede that Ms. Blanco was an employee of Amazing Gracie, LLC.  Ms. Blanco was paid by that entity during the relevant period, and that entity set her schedule and handled employment matters.  Defendants recognize that individuals can also be joint employers under the FLSA although, almost always, these individuals are also employees or owners of the employing entity.  Even in that case, the individual "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee," in order to qualify as an FLSA employer. *See e.g., Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986)). In this case, both Defendants neither owned nor were employed by Amazing Gracie, LLC, and had no operational control over it. [DSMF, ¶ 116 ].

The definition of "joint employer" for the purposes of the FLSA is set forth in 29 C.F.R. § 791.2  The rule as it existed at the beginning of the period relevant to this dispute is set forth in Exh. "2."  The initial rule was unhelpful in determining what facts resulted in a finding of joint employment. *See Joint Employer Status Under the Fair Labor Standards Act*, 85 Fed. Reg. 2820-01 (January 16, 2020) ("The Department is concerned that part 791 does not provide adequate guidance for the most common joint employer scenario under the Act—where an employer suffers, permits, or otherwise employs an employee to work, and another person simultaneously benefits from that work.").[10]  For that reason, 29 C.F.R. § 791.2 was amended effective March 16, 2020. *See § 791.2 Determining Joint Employer Status under the FLSA*, 29 C.F.R. § 791.2 (Exh. "3").

---

[10] This situation is termed a "vertical joint employer situation."

The amended rule was rescinded effective October 5, 2021, i.e., after Plaintiff's termination, and no amended rule was provided in its place. *See Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule*, 86 Fed. Reg. 40939-01, 2021 WL 3207510 (July 30, 2021). Accordingly, the rule that existed prior to the effective date of its rescission is operative in this dispute.

Under Section 791.2(a)(1), ''four factors are relevant to the determination'' of whether the other employer is a joint employer in the vertical joint employment situation.[11]  Those four factors are whether the other person: (1) hires or fires the employee; (2) supervises and controls the employee's work schedule or conditions of employment to a substantial degree; (3) determines the employee's rate and method of payment; and (4) maintains the employee's employment records.[12] Under the rule, the potential joint employer must actually exercise—directly or indirectly—one or more of these indicia of control to be jointly liable under the FLSA. 85 Fed. Reg. 2859.  In other words, the power to control, without the actual exercise of that power, is insufficient to establish joint employer liability.  "No single factor is dispositive in determining joint employer status under the Act." *Id.*  Whether a person is a joint employer under the Act will depend on how all the facts in a particular case relate to these factors, and the appropriate weight to give each factor will vary depending on the circumstances of how that factor does or does not suggest control in the particular case. *Id.*  The Joint Employer regulation specifically excluded any consideration of the employee's economic dependence on the potential joint employer. *Id.*

1.      **There are sufficient facts in dispute to preclude summary judgment on the issue of joint employment**

a)      *Defendant Lindsey Finch*

Defendant Finch was not present to act as the employer. [DSMF, ¶ 100].  She retained the firm of Amazing Gracie LLC to perform that function. [DSMF, ¶ 100].  She testified that she asked the agency that employed Ms. Blanco for a certain number of hours to be covered and that she did

---

[11] Plaintiff asks the court to evaluate the joint employer issue under the wrong test. Plaintiff's proposed "economic reality test" and its six prongs are derived from cases involving determinations of whether a worker is an employee or an independent contractor. *See* PMSJ, pp. 4-5.  These cases and the six-part test make no sense here.

[12] "Employment records for purposes of the regulation means "records, such as payroll records, that reflect, relate to, or otherwise record information pertaining to the hiring or firing, supervision and control of the work schedules or conditions of employment, or determining the rate and method of payment of the employee."

not direct who among the nannies appeared at any particular time. [DSMF, ¶ 100]. Dr. Finch never spoke with Ms. Blanco about sleeping arrangements, but she believed that Ms. Blanco was free to make whatever sleeping arrangements she wished. [DSMF, ¶ 102]. Dr. Finch did not know at what hours Ms. Blanco came and left each overnight shift. [DSMF, ¶ 103]. She testified that she outsourced all aspects of the nanny operation including scheduling, payroll and regulatory compliance. [DSMF, ¶ 101]. The lone exception was during the brief period when the family separated from Nannies with Love and before the arrangement with Amazing Gracie LLC was created. In that interim period, Dr. Finch paid the nannies directly by personal check and disclosed the amounts paid to a payroll company – NannyChex, LLC – which made the payments to the taxing authorities and issued W-2s to the employees. [DSMF, ¶ 101].[13] Dr. Finch did not know Ms. Blanco's or the other nannies' particular job duties (such as who was responsible for giving the girls dinner or bathing them) and did not know the hours Ms. Blanco worked. [DSMF, ¶ 104]. Dr. Finch did not maintain employment records for the nannies.[14] [DSMF, ¶ 105]. Dr. Finch did not control or supervise Ms. Blanco "to a substantial degree" and her phone records indicate that she never called Ms. Blanco once, and that Ms. Blanco only called Dr. Finch once, and it was a missed call.

### b)   *Defendant Anand Samuel*

Mr. Samuel did nothing that would cause him to be Ms. Blanco's employer. Mr. Samuel did not pay Ms. Blanco, either directly or indirectly, did not direct her comings and goings, did not set or modify her work schedule, and did not direct the discharge of Ms. Blanco's work duties. [DSMF, ¶ 110]. Mr. Samuel did not hire, fire, or pay Ms. Blanco. He could hardly have done so given the language barrier. [DSMF, ¶ 111-112]. His knowledge of the terms of Ms. Blanco's employment was acquired after he was sued and after Ms. Blanco's employment ceased. [DSMF, ¶ 113]. Prior to then, he did not know Ms. Blanco's schedule, pay rates, or even the method or frequency by which she or the other nannies were paid. [DSMF, ¶ 113]. Defendant Samuel had no operational control over, and knew little about, Ms. Blanco's employer, Amazing Gracie, LLC. [DSMF, ¶ 116]. He did not maintain employment or time records for any of the nannies.[DSMF, ¶ 114].

In sum, there is a genuine issue of material fact as to whether Defendants were joint employers of Plaintiff when Plaintiff was employed by Amazing Gracie, LLC.

---

[13] The amounts reflected in the W-2 statements are very small as would be expected since the vast majority of the nannies' compensation was paid by Amazing Gracie, LLC, not Dr. Finch.

[14] The regulation provides that the "maintenance of employment records factor alone does not demonstrate joint employer status."

**D.** **Defendants' Good Faith Defense to Liquidated Damages (a) Reflects Applicable DOL Regulations and Corresponding Interpretive Guidance, and (b) is Not Ripe for Summary Adjudication**

An employer found to be liable for unpaid overtime pay under the FLSA shall be liable to the affected employee for an equal amount in liquidated damages. 29 U.S.C. § 216(b).  However, 29 U.S.C. § 260 provides a defense to liquidated damages where the employer establishes that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  The good faith defense is deemed met where the "employer's act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency. *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir. 1987).  The designated agency in *Cole*, as in this case, is the DOL Wage and Hour Division.

Ms. Blanco was the third or fourth live-in nanny who worked in the Defendants' household. Defendants have relied on live-in nannies (who worked and slept over at their home at least five consecutive nights) from September 2014 to August 2021. In September 2018, when Shane Tompkins (the predecessor live-in nanny to plaintiff) was separating from NWL and the options for retaining her services without NWL were being considered, Mr. Samuel researched the requirements for the live-in exemption for domestic workers.  This research led Mr. Samuel to Fact Sheet #79B: Live-in Domestic Service Workers Under the Fair Labor Standards Act (FLSA), which was published by the Department of Labor in 2013. [DSMF, ¶ 93].   The publicly available DOL publication tracks the language of 78 Fed. Reg. 60,474.  The publication clearly states that domestic employees who work and sleep on the employer's premises for five consecutive days or nights each week would qualify as "residing in" the household for an "extended periods of time" and, therefore, are exempt from the FLSA's overtime provisions regardless off the number of hours that they work each week. [*See* Declaration of Anand Samuel, ¶ xx & Exh. "A" thereto]. Defendants relied upon this DOL's publication in reaching their conclusion that Ms. Blanco was a live-in nanny within the meaning of 552.102. [DSMF, ¶ 93].

As for whether the reliance was in good faith, it is worth noting out that Defendants could easily have paid Ms. Blanco the same amount of money every week for the same number of hours, while still paying her an overtime premium, by simply reducing her regular rate, and paying her

time and one-half for all hours over 40.[15]   It makes no sense for Plaintiff to argue that Defendants were trying to cheat her out of overtime.  Defendants' conduct could not possibly be willful as that term is commonly understood.  Defendants subjectively believed that Ms. Blanco was overtime exempt, and that belief was objectively reasonably in view of the DOL regulation and interpretive guidance.

The good faith defense is deemed met where, as here, the "employer's act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency." *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir. 1987).  The designated agency in *Cole*, as in this case, is the Department of Labor's Wage and Hour Division.  29 C.F.R. § 790.17(c) provides that reliance on agency interpretations for purposes of the "good faith defense" includes any statement "ordinarily of an advisory character, indicating merely the agency's present belief concerning the meaning of applicable statutory language" and includes "bulletins, releases, and other statements issued by an agency which indicate its interpretation of the provisions of a statute."

Further, numerous courts have held that entering summary judgment on the issue of liquidated damages is premature where, as here, there has been no finding of liability. *E.g., Prickett v. DeKalb Cnty.*, 276 F. Supp. 2d 1265, 1271 (N.D. Ga. 2003) ("Only after a finding of liability has been reached does the Court reach the issue of liquidated damages."), vacated in part, 349 F.3d 1294 (11th Cir. 2003); *Perez v. Bland Farms Prod. & Packing, LLC*, 2016 WL 1070842, at *7 (S.D. Ga.) (finding it "inappropriate" to rule on the issue of good faith at summary judgment, "especially considering the discretionary nature of the defense"); *Talbott v. Lakeview Ctr., Inc.*, 2008 WL 4525012, at *10 (N.D. Fla.) (For purposes of adjudicating willfulness for purposes of the FLSA's three-year statute of limitations, the court found that "there is insufficient evidence in the record to conclude as a matter of law that a violation of the FLSA, if any occurred, was willful. Indeed, as liability has not yet been established this issue is premature.").

Accordingly, the court should deny summary judgment for Plaintiff on the issue of liquidated damages. The issue is not ripe for adjudication.  Only after a finding of liability has been

---

[15] For example, Ms. Blanco could have received a minimum wage plus an overtime premium for hours above 40 per week, for a weekly pay of $714, i.e., [(40 hours x $7.25) + ((39 hours) x (7.25 * 1.5)) = $714.12], which is less than what Ms. Blanco received for her services each week.

reached does the Court reach the issue of liquidated damages. Further, Defendants meet the requirements for the defense under 29 U.S.C. § 260 based on their reliance on DOL interpretation of the live-in exemption from overtime pay for domestic workers.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants ANAND ADRIAN SAMUEL and LINDSEY ADAMS FINCH respectfully request that the Court deny Plaintiff's Summary Judgment Motion and enter judgment in favor of Defendants pursuant to Fed. R. Civ. P. 56(f)(1).

Dated:  May 20, 2022.

Respectfully submitted,

*/s/Mark J. Beutler*
Mark J. Beutler, Esq.
Florida Bar No. 0023400
Email: mjb@mjbpa.com and jmm@mjbpa.com
**LAW OFFICES OF MARK J. BEUTLER, P.A.**
9400 S. Dadeland Boulevard, Suite 600
Miami, FL 33156
Tel.:  305-487-0942 | Fax: 786-513-4651

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 20, 2022, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, which will serve all counsel or parties of record identified on the attached Service List, this day.

*/s/ Mark J. Beutler*
Mark. J. Beutler

**SERVICE LIST**

J. H. Zidell, Esq.
J.H. Zidell, P.A.
300 71st Street, Suite 605
Miami Beach, FL  33141
Tel.: 305-865-6766 | Fax: 305-865-7167
zabogado@aol.com
*Attorney for Plaintiff*

20