United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Maria Eugenia Blanco, Plaintiff, ) <br> ) <br> v.  ) <br> ) <br> Anand Adrian Samuel and Lindsey ) <br> Adams Finch, Defendants. ) | Civil Action No. 21-24023-Civ-Scola |

### Order Denying Motion for Summary Judgment

Plaintiff Maria Eugenia Blanco seeks the recovery, from Defendants Anand Adrian Samuel and Lindsey Adams Finch (together, the "Parents"), of overtime payments she says she is due under the Fair Labor Standards Act for her work for them as a nanny/housekeeper. (Compl, ECF No. 1-1.) Blanco says that, from January 2019 through August 2021, she worked 79 hours a week in the Parents' home, caring for their children, and was paid only her regular, hourly rate for all hours worked, without receiving time-and-half overtime payments for all hours worked in excess of forty each week. Blanco now seeks summary judgment as to (1) her status as the Parents' covered employee under the FLSA; (2) her resulting entitlement to overtime wages; and (3) the Parents' inability to escape liquidated-damages liability. (Pl.'s Mot., ECF No. 45.) The Parents have responded, opposing the motion (Defs.' Resp., ECF No. 52) and Blanco has timely replied to that opposition (Pl.'s Reply, ECF No. 58). In addition, both sides have presented voluminous records in support of their statements of facts. After careful review and for the reasons that follow, the Court **denies** Blanco's motion (**ECF No. 45**). The Court also sets this matter, as explained in the conclusion section, for hearing on **Wednesday, August 10, 2022, at 9:00 a.m.**

1. **Factual Background**[1]

Many of the facts the parties present in their statements have no bearing on the merits of Blanco's motion. Instead, the Court recounts just the facts and portions of the record pertinent to the actual issues raised in the briefing.

After initially working in the Parents' home on a part-time basis, Blanco began working there full time in January 2019. (Pl.'s Stmt. of Facts ¶ 57, ECF No. 47.) At that time, the Parents had four children, ranging in age from less than a year to seven years old, and lived in a three-bedroom, two-bath home in Surfside, Florida. (*Id.* ¶ 5.) The Parents shared one of the bedrooms and one of the bathrooms. (*Id.* ¶ 6.) The two other bedrooms and remaining bathroom were

---

[1] Except where indicated, the facts are undisputed.

shared by Blanco and the four children, with Blanco and the two youngest children in one bedroom and the other two children in the third bedroom. (*Id.*) Blanco did not have any of her own private space and always brought a change of night clothes, with her overnight bag, when she arrived for her shifts. (*Id.* ¶¶ 8–9.)

Blanco worked a twenty-three-hour shift, beginning on Sundays at 10am, until Monday, the following day, leaving the residence at 9am. (*Id.* ¶ 57.) She would then return to the residence that same evening, on Monday, at 7pm, and work a night shift, for fourteen hours, until 9am the following day. (*Id.* ¶ 9.) Blanco worked this same overnight shift, starting on Tuesday, Wednesday, and Thursday evenings, as well, ultimately working a total of 79 hours each week, for which she received $800.[2] (*Id.* ¶¶ 58, 73; Defs.' Stmt. of Facts ¶ 58, ECF No. 54.) Blanco was off the clock (and left the residence) after each shift, including from Fridays at 9am until her day shift on Sundays began at 10am. (Pl.'s Stmt. ¶¶ 9, 58.) When not at the Parents' residence, Blanco resided with her aunt, in North Miami. (*Id.* ¶ 10.) Blanco stopped working at the Parents' residence in August 2021. (*Id.* ¶ 31.) There does not appear to be any real dispute that, for at least part of Blanco's shift, while the children were sleeping, she also slept and otherwise had time available to herself. (*Id.* ¶ 78; Def.'s Stmt. ¶ 78.)

The parties dispute whether the Parents were Blanco's employers. Blanco says Amazing Gracie, LLC, the entity which both sides agree issued her paychecks,[3] was simply a front, through which the Parents actually controlled all aspects of her employment. (*E.g.*, Pl.'s Stmt. ¶¶ 1–2, 75.) According to Blanco, Finch directed Grace Trask, the daytime nanny, who started in 2018, to create the LLC, though which all the nannies and housekeepers would be paid. (*Id.* ¶¶ 61, 64.) There is no dispute that Amazing Gracie's only income came from Finch, as the Parents were the company's only client. (*Id.* ¶ 66; Def.'s Stmt. ¶ 68.) And, as Blanco describes it, Trask had no authority to hire or fire and was simply a regular nanny along with Blanco and the other staff. (Pl.'s Stmt. ¶ 76.)

On the other hand, the Parents maintain they did not control Blanco's work schedule, had no input as to how money was apportioned among the staff, and no authority over the agency's personnel policies or decisions. (Def.'s Stmt.

---

[2] While the Parents don't dispute Blanco's representation that she earned $800 a week, they also say, elsewhere, that Blanco was paid $880 a week. (Defs.' Stmt. ¶ 117.) In reply, Blanco acknowledges she was paid between $800 and $880 each week. (Pl.'s Reply Stmt. ¶ 117, ECF No. 59.) Regardless, the exact amount Blanco was paid does not affect the Court's analysis of the issues raised in the briefing.

[3] Finch acknowledges paying Blanco, for about eight weeks, before Amazing Gracie was created, directly, by way of a personal check, using a payroll company, NannyChex, LLC, to make payments to the taxing authorities and to issue W-2s. (Defs.' Stmt. ¶ 101.) Blanco says, in addition to these payments, Finch herself also made "numerous payments" to Blanco, even after the creating of Amazing Gracie. (Pl.'s Stmt. ¶ 101.)

¶¶ 2, 73, 75–76, 106.) They say they simply paid Amazing Gracie one lump sum for all services provided. (*Id.* ¶ 101.) They also say that the idea to create Amazing Gracie, which they refer to as a "nanny agency," came from Trask's aunt, not from Finch. (*Id.* ¶ 64, 67.) The parents further relay that they compensated Amazing Gracie for Trask's processing the nannies' payroll and directing the entirety of the nanny operation. (*Id.* ¶ 67.) Blanco disputes this, insisting that Trask was never compensated for these undertakings. (Pl.'s Stmt. ¶ 67.) Blanco also says that Trask did not decide how much to pay her, or the other nannies, and that Trask was never given the authority to direct any of Blanco's work. (*Id.* ¶ 70.)

### 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, admissions on file and other documents, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Analysis

In seeking summary judgment, Blanco maintains there are no genuine issues of material fact regarding (1) her entitlement to overtime wages; (2) her status as the Parents' covered employee under the FLSA; or (3) the Parents' inability to escape liquidated-damages liability. In opposition, the Parents argue that, because Blanco resided in their home, she was exempt from overtime wages under the FLSA; that Amazing Gracie—the limited liability company—was Blanco's employer, not the Parents; and that they had a good-faith basis to presume that Blanco was exempt from overtime. After careful review, and as detailed below, the Court finds Blanco's motion fails on all three bases: she has failed to establish an absence of any disputed material facts with respect to her overtime-wage entitlement; her status as the Parents' covered employee; or her entitlement to liquidated damages.

### A. Blanco has failed to establish she is entitled to summary judgment as to her overtime claims.

In opposing Blanco's motion for summary judgment, the Parents submit that Blanco's position as a live-in, domestic employee exempts her from earning overtime wages afforded to employees under 29 U.S.C. § 207, the FLSA's "maximum hours" provision.[4] In support, they point to an exemption set forth in § 213. That exemption provides that the overtime entitlements of § 207 do not apply to (1) "any employee who is employed in domestic service," (2) "in a household," and (3) "who resides in such household." 29 U.S.C. § 213(b)(21). In turn, say the Parents, Department of Labor regulations and interpretive guidance explain that this live-in, domestic-service exemption can apply not only when the employee resides on the employer's premises "permanently," but also when the employee resides there for "extended periods of time." Application of the Fair Labor Standards Act to Domestic Service, 29 C.F.R. Part 552, 78 FR 60,454, 60,474 (Oct. 1, 2013) ("2013 Final Rule"); *see also* 29 C.F.R. § 785.23. Further, posit the Parents, an employee is considered to reside on an employer's premises for "extended periods of time" if the employee spends "five consecutive days or nights" "working and sleeping on the employer's premises." 2013 Final Rule, 78 FR at 60,474. And, they continue, since there is record evidence that Blanco spent five consecutive days or nights working and sleeping at the Parents' home, from 2019 through 2021, Blanco cannot prevail on her motion for summary judgment. The Court agrees with the Parents: Blanco has failed to demonstrate that she is entitled to summary judgment regarding her overtime claims.

---

[4] This provision requires an employer to compensate an employee "at a rate not less than one and one-half times the regular rate at which he is employed" for each hour worked in excess of forty hours in one workweek. 29 U.S.C. § 207(1).

To start, the parties do not dispute that Blanco was employed in domestic service, in a household, thus satisfying the first two elements of the overtime exemption. Where the parties diverge is the third element: whether Blanco has established she did not "reside" in that household. Blanco's argument rests on her interpretation of the way the exemption provision uses the word "resides." In promoting her definition, Blanco looks to the word's common usage and dictionary definition and applies concepts related to when an employer may exclude, altogether, time spent sleeping from the number of hours an employee is deemed to have worked. In light of the Department of Labor's rules and guidance, however, the Court finds Blanco's arguments miss their marks.

In 2013, the Department of Labor issued a final rule, in accordance with its broad grant of authority to do so. *See Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1088 (D.C. Cir. 2015) (noting that "[t]he 1974 Amendments"—to the FLSA which, among other things, extended certain protections to household domestic employees—"included a broad grant of rulemaking authority empowering the Secretary of Labor to 'prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act.'") (quoting 1974 Amendments, Pub. L. No. 93–259, § 29(b), 88 Stat. 76). Within that 2013 Final Rule, the Department recites the exemption at issue here, that "any employee who is employed in domestic service in a household and who resides in such household" is not entitled to overtime. 2013 Final Rule, 78 FR at 60473 (quoting 29 U.S.C. 213(b)(21). As the Rule points out, the Department's regulations distinguish between, on the one hand, the requirement that all domestic-service employees, regardless of whether they reside in the household where they are employed or not, be paid at least a minimum wage for all hours worked and, on the other, the statutory exemption from overtime that applies only to "live-in worker[s]." 2013 Final Rule, 78 FR at 60473 (citing 29 C.F.R. § 552.102(a), titled "Domestic Service Employees—Overview" and noting that the Department also refers to "[d]omestic service employees who reside in the household where they are employed . . . as 'live-in domestic service employees.'")

As the Department noted, it "received several comments requesting clarification on the definition of a live-in domestic service employee" in response to its notice of proposed rulemaking. 2013 Final Rule, 78 FR at 60473. In addressing the various concerns raised, the Department further explained there was no proposed change to the definition of a "live-in domestic service employee," who is exempt from overtime compensation under the FLSA, and that the Department intended "to continue to apply its existing definition of live-in domestic service employees." *Id.* Elaborating, the Department explained that "an employee will be considered to be a live-in domestic service employee under § 552.102 if the employee: (1) meets the definition of domestic service

employment under § 552.3 and provides services in a private home pursuant to § 552.101; and (2) resides on his or her employer's premises on a permanent basis or for *extended periods of time*." 2013 Final Rule, 78 FR at 60474 (cleaned up) (emphasis added). The Department then identified two different sets of criteria that would qualify as residing on an employer's premises for an extended period of time: (1) working and sleeping on the employer's premises for five days a week (120 hours or more) or, (2) for an employee working fewer than 120 hours per week, working and sleeping on the employer's premises for five *consecutive* days or nights. *Id.*

Courts in this district have not hesitated to apply these criteria in cases raising the § 213(b)(21) exemption. *See Romero v. Diaz-Fox*, 1:18-CV-21218, 2021 WL 3619677, at *5 (S.D. Fla. Aug. 16, 2021) (Gayles, J.) (applying the 2013 Final Rule criteria but concluding the exemption did not apply because the employee only slept at the employer's home two nights a week, "when she worked a double shift on Saturdays and Sundays"); *Kefeenie v. Gloria Martin Tr.*, 17-24346-CIV, 2018 WL 4301558, at *8 (S.D. Fla. Sept. 10, 2018) (Gayles, J.) (applying the 2013 Final Rule criteria and finding the employee exempt from overtime because she "was required to sleep overnight seven days a week, and worked 136 hours per week"); *Quintero v. Lopez*, 15-21162-CIV, 2016 WL 7508264, at *7 (S.D. Fla. June 6, 2016) (Lenard, J.) (reciting the 2013 Final Rule criteria but finding them inapplicable because, "although [the employee] was a full-time domestic service employee, she only served as a live-in domestic service employee temporarily for five days while filling in for a co-worker") (emphasis in original). Blanco herself seems to agree that the Department's 2013 Final Rule applies but complains that the Parents rely on it "*too* heavily." (Pl.'s Reply at 5 (emphasis in original).) Ultimately, Blanco fails to convince that the Court should not look to the Department's own rule in order to discern the definition of the word "reside."

Part of Blanco's argument is that the "exemption is not automatically triggered by the '(5) nights weekly' language,'" in the 2013 Final Rule, but rather, the number of nights spent at an employer's residence should merely be considered one of many factors in determining whether the employee actually "resided" at the residence. (Pl.'s Reply at 3.) In support, she cites 29 C.F.R. § 785.23, which acknowledges that, in some cases, an employee residing on his or her employer's premises may not actually be working the entire time he or she is on the premises. For example, as that section explains, an employee, residing on the premises, may, for some periods, still "engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own." 29 C.F.R. § 785.23. Based on this complication, which renders it "difficult to determine the exact hours worked,"

the Department provides that, "under these circumstances," "any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted." *Id.* Without fully explaining why, Blanco interprets this to mean that, since all her hours at the Parents' residence were considered "working time," she could not, then, be regarded as residing there. (Pl.'s Reply at 58.) The Court is not persuaded.

Importantly, the final rule is straight forward: if an employee (1) works fewer than 120 hours per week; and (2) both works and sleeps on the employer's premises; (3) for five consecutive days *or* nights, the Department considers her to reside on the premises for an extended period and to thus fall under the overtime exemption. Nothing in § 785.23 thwarts the application of these straightforward criteria in this case. There is no dispute that Blanco worked fewer than 120 hours a week. And while Blanco quibbled regarding the definition of sleep, during her deposition, at times insisting she never truly fell asleep (*e.g.*, Blanco Dep., 74:2–7 (submitting that "[s]leep is when one sleeps in one's bed resting, calm, without having to attend or see to anything,"), she also acknowledged actually having slept during her overnight shifts (*id.* at 70:22–71:2 (admitting that she couldn't say she "never" slept at the residence and that at "times" she fell "into a sleep like state"); 71:9–11 (admitting that she was at times in a "state of semi sleep" and possibly snoring). More importantly, in her statement of material facts, Blanco pointedly maintains that she "always slept with the Defendants' 2 youngest daughters" "during the night shift" (Pl.'s Stmt. ¶ 7) and that her "'sleep time' with the Defendants['] children" was considered "compensable time" (*id.* ¶ 78). Similarly, in her motion, Blanco says, without qualification, that she "always slept with the Defendants' daughters" (Pl.'s Mot. at 2) and that the "essential requirements" of her job "involved her sleeping in a bedroom with the Defendants['] two youngest daughters" (*id.* at 7). Regardless, for the purposes of Blanco's motion, she certainly has not shown an absence of a factual dispute as to whether or not she, in fact, slept at the Parents' house, during her night shifts. And, finally, there is no dispute that Blanco spent five consecutive nights at the Parents' house from 2019 to 2021. (Pl.'s Stmt. ¶ 58 (noting that Blanco worked overnight shifts on Sunday, Monday, Tuesday, Wednesday, and Thursday).) Notably, there is no requirement in the 2013 Final Rule that the employee must remain on the property continuously, for five consecutive twenty-four-hour periods. Instead, the Rule is unambiguously phrased in the disjunctive, requiring that the employee work and sleep on the premises for five consecutive days *or* nights only, thus clearly contemplating prolonged absences.

Blanco's contrary approach is unavailing. That all her time on the premises—the 79 hours—was considered compensable time, even though she may not have been actually working, is not necessarily at odds with a finding

that she resided on the property. It simply means that she and the Parents agreed that she would be compensated for all those hours—regardless of whether she was sleeping herself or tending to private matters, such as studying English, while the children slept. (Blanco's Dep. at 70:16–21 (mentioning that she "would study English with Duolingo" while the children slept).) In other words, "tak[ing] into consideration all of the pertinent facts," 29 C.F.R. § 785.23, the parties here appear to have reached an agreement that, even though Blanco may not have been performing actual work for all 79 hours she was at the residence, she would, nonetheless be compensated for all those hours.

Blanco's reliance on the fact that she did not have her own private quarters, to show that she did not reside on the premises is similarly unpersuasive. In making this argument, Blanco has conflated two different, albeit related, issues under the FLSA: (1) whether time spent sleeping can, by agreement, be excluded from the number of hours worked for purposes of calculating an employee's minimum wage and overtime compensation, under 29 C.F.R. § 785.23—not at issue in this case—versus (2) whether the employee is exempt from the FLSA's overtime provisions, under 29 U.S.C. § 213(b)(21) and 29 C.F.R. § 552.102(a). That is, Blanco has improperly imposed the requirements for excluding sleeping time or time during which an employee has freedom from all work obligations onto the separate question—and the question at issue in this case—of whether an employee qualifies as exempt from overtime. In sum, Blanco's reliance on precedent and regulatory language dealing with the exclusion of sleep-time, or truly personal-time, from determining an employee's total compensable hours, is misplaced. None of those cases or regulations offers guidance on determining whether a domestic-service employee is exempt from overtime under the FLSA. *See United States v. Sabhnani*, 599 F.3d 215, 257 (2d Cir. 2010) (recognizing, for example, that a Department of Labor opinion letter, focused on providing guidance for calculating the number of hours a group-home employee worked, "inapposite" to the question of determining whether an employee should be considered to "reside in a household" for purposes of the § 213(b)(21) exemption). At bottom, simply because some regulations and cases note that an employee who *does* have private quarters, in a home-like environment is considered to reside on an employer's premises, does not mean that an employee *must* have such private quarters in order to qualify as exempt from overtime.

Finally, the Court is also not convinced that it should look to the dictionary definition of "reside" rather than the Department's definition or to cases that predate the definition as published by the Department in its 2013 Final Rule. "Where an agency rule sets forth important individual rights and duties, where the agency focuses fully and directly upon the issue, where the

agency uses full notice-and-comment procedures to promulgate a rule, where the resulting rule falls within the statutory grant of authority, and where the rule itself is reasonable," all as exhibited in conjunction with the 2013 Final Rule, "then a court ordinarily assumes that Congress intended it to defer to the agency's determination." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 173–74 (2007). In short, Blanco provides no reason why, in this case, the Court should ignore the Department's straightforward definition of "reside," as set forth in the Rule, in favor of outdated caselaw or a contrary dictionary definition.[5]

> **B. Blanco has failed to establish her entitlement to summary judgment on the issues of whether the Parents were her employer under the FLSA or their liability for liquidated damages.**

As to the issue of whether the Parents were her employer under the FLSA, the Court, once again, finds Blanco's presentation lacking. In seeking summary judgment in her favor that she "was a covered FLSA employee of the Defendants," she simply recites a list of disjointed facts, not all of which pertain to the issue, and then follows that with a series of legal concepts, some relevant, some not. She makes no attempt, however, to link the two to each other or to the point she is trying to make about whether, under the FLSA, the Parents were, in fact, her employers.

Further, the Parents, in response, have supplied facts indicating that, for the vast majority of Blanco's employment, a limited liability company, Amazing Gracie, LLC, was actually Blanco's employer. (*E.g.*, Defs.' Stmt. ¶ 97.) In addition, the Parents set forth other facts that, if true, would show that they were not Blanco's joint employers, with Amazing Gracie, either. (*Id.* ¶¶ 100–107; 109–117.) Whether the Parents' version of the facts would carry the day, of course, remains to be seen. But there is no denying that the facts as they present them, and when read in the light most favorable to them, as the nonmoving party, show that there is indeed a genuine issue of material fact as to this issue, to be resolved through trial.

---

[5] The Court notes that Blanco has copied and pasted vast swaths of excerpts from various cases, without providing any context or elaboration as to how the legal analyses and facts within those cases apply here. (*E.g.*, Pl's Mot. at 9–11, 13–17 (citing, verbatim, pages and pages from *Manrique v. Schoenbaum*, 1:09-CV-3212-SCJ, 2011 WL 13269434, at *7 (N.D. Ga. Aug. 12, 2011); *Canizales v. Lawrence*, CV H-07-3796, 2009 WL 10719452, at *15 (S.D. Tex. Feb. 18, 2009); and *Chao v. Jasmine Hall Care Homes, Inc.*, 205-CV-1306-GEB-KJM, 2007 WL 4591438, at *1 (E.D. Cal. Dec. 28, 2007).) Simply reproducing portions of these opinions, verbatim, without tying the analyses or legal concepts set forth within them to the facts of this case, is unhelpful. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (cleaned up).

Finally, based on the above findings, that Blanco's motion fails with respect to both her overtime claims as well as her position that the Parents were undisputedly her employers, the Court also denies her motion with respect to the liquidated-damages issue. Because there has been no finding that the Parents are liable for Blanco's claimed unpaid overtime pay under the FLSA, a finding in this regard, on a motion for summary judgment, would be premature. *Davila v. Menendez*, 717 F.3d 1179, 1186 (11th Cir. 2013) ("Before making a determination as to [the employee's] entitlement to liquidated damages, the district court was required to await the finding of the jury about willfulness. The willfulness or good faith question must be answered first by the jury to determine the period of limitations and then, if there is a verdict for the employee, again by the district court to determine whether to award liquidated damages.") (cleaned up).

### 4. Conclusion

As set forth above, the Court **denies** Blanco's motion for summary judgment. (**ECF No. 45**.)

Additionally, although the Parents themselves did not move for summary judgment, they raise the specter of Federal Rule of Civil Procedure 56(f)(1), which provides that a court may nonetheless enter summary judgment in favor of the non-moving party "where a legal issue has been fully developed, and the evidentiary record is complete." *See Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant."). Because there may be some merit to applying this rule here, the Court sets this matter for oral argument, to allow Blanco to explain why, based on the facts presented, the Court should not enter summary judgment in the Parents' favor. In particular, in conjunction with the Court's interpretation of the overtime exemption, as set forth above, the Court points to Blanco's acknowledgment of the following key facts:

(1) Blanco worked as a full-time domestic employee from 2019 through 2021 (*e.g.*, Pl.'s Stmt. ¶ 1);

(2) Blanco worked fewer than 120 hours each week (*e.g.*, *id.* ¶ 58);

(3) Blanco stayed at the Parents' residence for five consecutive nights each week. (*e.g.*, *id.* ¶¶ 9, 58); and

(4) Blanco slept and studied English during her shifts (*e.g.*, *id.* ¶¶ 7, 78; Blanco Dep. at 70:16–71:2, 71:9–11; Pl.'s Mot. at 2, 7; Pl's Reply at 4).

The Court **sets this issue for hearing** on **Wednesday, August 10, 2022, at 9:00 a.m.**, at the Wilkie D. Ferguson, Jr. Federal Courthouse, Courtroom 12-3, 400 North Miami Avenue, Miami, Florida 33128. Based on this setting and the Court's ruling on Blanco's motion for summary judgment, the Court **denies** the Parents' motion for oral argument (**ECF No. 70**).

**Done and ordered** at Miami, Florida, on August 5, 2022.

Robert N. Scola, Jr.
United States District Judge