```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                     CASE NO. 1:21-cv-24023
 3
     MARIA EUGENIA BLANCO,                    Miami, Florida
 4
          Plaintiff,                      August 23, 2022
 5
             vs.                      8:40 a.m. to 9:15 a.m.
 6
     ANAND SAMUEL AND LINDSEY FINCH,
 7
          Defendants.                     Pages 1 to 54
 8   _____
                      MOTION FOR SUMMARY JUDGMENT
 9               BEFORE THE HONORABLE ROBERT SCOLA
                    UNITED STATES DISTRICT JUDGE
10
     APPEARANCES:
11
     FOR THE PLAINTIFF:        JAIME J. ZIDELL, ESQ.
12                             J.H. Zidell P.A.
                               300 71st St Ste 605
13                             Miami Beach, FL 33141-3089
                               Zabogado@aol.com
14

15   FOR THE DEFENDANTS:       MARK J. BEUTLER, ESQ.
                               Law Offices of Mark J. Beutler, P.A.
16                             Dadeland Towers South
                               9400 South Dadeland Boulevard,
17                             Suite 600
                               Miami, FL  33156
18                             JMM@MJBPA.com

19
     STENOGRAPHICALLY REPORTED BY:
20
                               SHARON VELAZCO, RPR, FPR
21                             Official Court Reporter
                               United States District Court
22                             400 North Miami Avenue
                               8th Floor
23                             Miami, Florida 33128

24

25
```

```
 1              (The following proceedings were had:)

 2              THE COURT:  Good morning.  The next case is Blanco

 3    versus Samuel.

 4              Who is here for the plaintiff?

 5              MR. ZIDELL:  Jaime Zidell for the plaintiff.

 6              Good morning.

 7              THE COURT:  Good morning.

 8              For the defense?

 9              MR. BEUTLER:  Good morning your Honor.  Mark Beutler

10    for the defendants.  One of the defendants, Anand Samuel, is to

11    my right.

12              THE COURT:  Okay.  All right.  Good morning.

13              And this case is set for trial next week.

14              Is the plaintiff ready for trial?

15              MR. ZIDELL:  Yes.

16              THE COURT:  Is the defense ready for trial?

17              MR. BEUTLER:  We have certain obstacles for trial.  In

18    week two on the calendar call, I am scheduled to be an

19    arbitrator in arbitration that will last -- it's scheduled for

20    ten days, and will begin on the second week.

21              On the first week, my client, he -- not Mr. Samuel, but

22    Dr. Finch, she is scheduled for surgery then, and it would be

23    -- I mentioned this to Mr. Zidell.  I would like to push this

24    matter off, if possible.  And, we would like to explore

25    alternative dates.
```

1          I would also like to mention, your Honor, that there is

2     a pending motion for a settlement -- in this case, conference,

3     it has been pending in the entire case, and I would like the

4     Court to do one of two things, either order a settlement

5     conference in this case or, in the alternative, if Mr. Zidell

6     and I could agree, we would like to have another opportunity to

7     mediate this case.  I think it is possible it could settle, in

8     light of the Court's ruling, and I would like to have that

9     opportunity.

10          I mentioned that, as well, to Mr. Zidell, but -- not

11    the second mediation, but that, you know, I have tried to

12    explore with Mr. Zidell settlement.

13         THE COURT:  Okay.  So, in my order which denied the

14    motion for summary judgment, I posed some questions, which were

15    set for this morning.  So, why don't we take up those issues

16    now.  And, if the case is still going forward, then we will

17    talk about a specific trial date.

18         MR. BEUTLER:  We are prepared to address those issues,

19    your Honor.

20         THE COURT:  So, let me hear from you first,

21    Mr. Zidell.

22         MR. ZIDELL:  Yes.  May I remain seated so I don't have

23    to move all of these papers?

24         THE COURT:  As long as you are speaking into the

25    microphone, and we can hear you, yes.

1          MR. ZIDELL:  Thank you, your Honor.  Jay Zidell --

2          THE COURT:  You can take off your mask if you want.

3          MR. ZIDELL:  Okay.  The Court, based on its own

4    inherent authority, has required plaintiff to respond why the

5    DOL 2013 final rule would not apply to bar for overtime claims.

6    Now, this is an affirmative defense.  Normally, defendant or

7    employer has the burden to prove this defense.  And, in this

8    case, the defendant never moved for summary judgment.  But, we

9    are here based on the Court's directive.

10         Just to give the Court a little bit of background, in

11   case I was -- I didn't explain this in our pleadings, since I

12   formally did not respond to a motion for summary judgment from

13   the defendants, but, this 2013 rule by the DOL later became in

14   effect as of January 2015.

15         The Department says -- the Department of Labor is

16   giving effect to Congress's intent in 1974 to expand coverage

17   to the domestic service employees rather than restrict coverage

18   for a category of workers already covered.

19         Now, I think that that is important, as far as the

20   purpose of the regulation is concerned, because the DOL was not

21   out to expand the exemptions in order to exclude more and more

22   workers from its coverage under this rule.

23         Contrarily, they were expanding coverage based on their

24   own statement of their purpose.

25         The Court has focused on a regulation.  And, there are

1    three tiers to this regulation.  Clearly, if an employee lives

2    with an employer for seven days a week, that employee is

3    considered to reside with the employer.

4         The Department has a second tier and says that if an

5    employee works and resides on the employer's premises for 120

6    hours a week, that employee resides or can be considered a

7    live-in.

8         Then there is this third tier, which is a category that

9    applies to workers that may work less than 120 hours a week,

10   which is our plaintiff in this case, who worked 79 hours a

11   week, but regulation still requires that the employee work and

12   sleep on the employer's premises.

13        And, trying to address the Court's order as closely as

14   I can, really, I think that the definition of what it means to

15   sleep, under this particular provision, is -- is really the

16   crux of what the Court is asking us to respond to.

17        The court order, on summary judgment, cites part of

18   this DOL regulation, but does not cite the example that the DOL

19   gives in relation to the example.  And, that example is -- and

20   we think it is important -- says, from the 2013 final ruling,

21   if less than 120 hours per week is spent working and sleeping

22   on the employer's premises, five consecutive days or nights

23   would also qualify as residing on the premises for extended

24   periods of time.

25        For example, employee resides on the employer's

1    premises five consecutive days from 9:00 A.M. Monday until five

2    P.M. Friday, (they are sleeping four straight nights on the

3    premises), would be considered to reside on the employer's

4    premises for an extended period of time.

5         Similarly, an employee who resides on an employer's

6    premises five consecutive nights from 9:00 P.M. Monday until

7    ninth A.M. Saturday would also be considered to reside on the

8    employer's premises for an extended period of time.

9         We think that this example is very important that the

10   DOL cited in their final rule because it distinguishes between

11   sleep time and work time.  The example clearly states, at least

12   in one of those examples I just read, that it is considering an

13   employee who is working daytime hours and has a separate period

14   for sleeping to herself.  At least, in this case, herself.

15        In this case, we know that Ms. Blanco was a shift

16   worker.  She was not a live-in.  She worked 79 hours a week.

17   She came and went each shift with her own bag of clothes.  And,

18   that's uncontested.  That is even supported by another nanny

19   who is now Mr. Beutler's client for this litigation, Grace

20   Trask, who says the plaintiff was not a live-in.  She came

21   every day with her bag of clothes and she left at the end of

22   her shift, and she saw her do it because Ms. Trask replaced her

23   every day.

24        So, what does it mean, "sleep time?"

25        And I think that's what the Court's order was focused

1    on.  And the Court, in its summary judgment order, quotes some

2    of the plaintiff's deposition testimony, but not all of it.

3    And, we want to make sure that we have a clear record of

4    everything that the plaintiff said about her sleep time,

5    because we believe that if she gave so much details that she is

6    the only one testifying to this issue in this case.  The

7    defendants both disclaim any meaningful knowledge about what

8    the plaintiff did.  Their depositions were riddled with "I

9    don't know.  I don't know.  I don't know what she did.  I

10   wasn't there."

11           So, they said that they are not her employer.  She

12   lived in their house taking care of their kids, but the import

13   of their testimony is they really don't know what she did.

14           So, we have the plaintiff's testimony to rely on when

15   it comes to what she did, and she is the only witness in this

16   case.

17           It is the defendant's burden, and this is an exemption,

18   and this is what the plaintiff says happened during the

19   nighttime hours.  This is not quoted in the Court's order on

20   summary judgment.  And, I want to bring it to the Court's

21   attention.

22           Page 67 of the plaintiff's deposition, line 5, to

23   Page 68, line 10.  And, all of this is taken from the

24   plaintiff's facts in support of Plaintiff's Motion for Summary

25   Judgment.

1          At paragraph 79, docket entry 47, the plaintiff says

2     the following -- and, if I become too longwinded, then please

3     just -- you know, I can cite the record citations.

4          And, if the Court wants to review it independently, or

5     I can put it on the ELMO, but -- it is not that lengthy, but it

6     might get a little bit -- so, please let me know if I am

7     getting to that point.

8          THE COURT:  Well, I am more concerned about your

9     speaking slowly so the court reporter can get you.

10         MR. ZIDELL:  Okay.

11         All right.  Mr. Beutler asked my client.

12         "When you were done with your housekeeping

13     responsibilities, what then did you do?

14         Ms. Blanco states, "Generally, well, more or less, it

15     would about be one in the morning.  I would have to give the

16     bottle to the little girl again, change her diaper so that she

17     can sleep comfortably.  I would make sure that all of the girls

18     were covered, and that it wasn't that cold.  I would lower the

19     volume of the music.  The little girl" -- we will would refer

20     to her as "A" because I don't want to have to redact this

21     transcript -- "she had a lot of nervous problems at night.  She

22     would say that she had monsters in her bed.  Very strong nights

23     because the baby would wake me up because she would scream.

24     She would scream a lot.  She was nervous.  I had to calm her

25     down, give her massages.  I had to give her water, water, so

1    that she would calm down.

2         "Q.  If the baby was screaming, then would everybody in

3    the house be able to hear this?

4         "A.  No, because the couple sleeps with their door

5    closed.  And, precisely, that was my function, to be alert so

6    that the parent could sleep.  I was in nocturnal or evening

7    alert so that nothing would take place, and to make sure that

8    nothing would happen, make sure that nothing would happen and

9    that Mr. Anand would be able to sleep.  And, when Ms. Lindsey

10   was in the house, that she was not working, that she would be

11   able to sleep in order to go in and work.

12        "Q.  Did Mr. Anand ever ask you whether or not you

13   slept well the proceeding evening?

14        "A.  Never.  He never asked me, because I did not

15   sleep.  I did not sleep."

16        Now, the next segment, which is Page 70, Line 16 --

17   Line 16 to Page 71, line 2, the Court does cite in its order,

18   and it's a pretty small segment.  And that question to the

19   plaintiff was:

20        "Q.  Did you, from time to time, sleep in the room

21   where the two youngest children were sleeping?

22        "A.  No. I would not sleep.  I would be in alert mode.

23        "Q.  Well, what were you doing there?

24        "A.  I would study English with Duo Lingo.

25        "Q.  So, is it your testimony that you never slept at

1    the Samuel household?

2          "A.  The word "never" -- I can't use that word.  There

3    are times that I had to enter into a sleep-like state, but I

4    was always alert regarding the girls."

5          Page 73, line 15 to 23.

6          "Q.  So, if you are waking up on Sunday at 7:30 A.M.

7    and not getting to sleep again until 10:30 the following day,

8    you are awake for 27 hours, is that right?

9          "A.  The lapses of time going from the wee hours of the

10   morning, sometimes the little girls were calm.  I would not

11   sleep.  Never the word 'sleep.'  It is quite different, the

12   word sleep, from being in an alert stage or vigilant."

13         Page 74, lines 2 to 12 of the plaintiff's deposition,

14   that the plaintiff -- that the Court does not cite to in its

15   order on summary judgment.  The plaintiff states:

16         "A. And I want to repeat.  The words sleep and vigilant

17   are two different words.  In a vigilant state, one could simply

18   rest without falling asleep.  Sleep is one -- is when one

19   sleeps in one's bed, resting, calm, without having to attend or

20   see to anything.  That is sleep.

21         "Q.  Okay.  Well, then answer my question.  Did you go

22   27 hours from Sunday morning until Monday mid-afternoon without

23   sleep?

24         "A. Yes.  Well, the word sleep, profoundly, I never

25   slept."

1          Next is the plaintiff's deposition that the Court does

2    not reference in its order on summary judgment, which is

3    Page 82, lines 3 to 19.

4          "Q.  How often would the Samuel girls awaken during the

5    night?

6          "A.  Unfortunately, it is something very harsh, and

7    makes me very uneasy.  The girls -- they have a problem with

8    their nerves; many movies, many things that they see that are

9    aggressive, and they awake, they are nervous, exhausted during

10   the night.

11         "Q.  Ms. Blanco, I just asked how often -- how often or

12   frequent that the girl would wake up at night.

13         "A.  Up for three or four times.  The little ones that

14   were in my room, up to three or four times.  The other two that

15   were over there, yes, sometimes they were -- were calmer, more

16   serene.  But, the ones that I had, A, the little girl, and the

17   other A, she is very frightened, very frightened.  The other A,

18   she likes movies of things that are frightening."

19         Just to give the Court also a little bit of an

20   procedural backdrop, the plaintiff became the nightshift nanny

21   for the defendant in January of 2019 when the prior nanny died.

22   She, at that time, was working for the defendants in a

23   condominium or apartment over on Collins Avenue before they

24   moved to their home on Froude Street in Surfside.  That lasted

25   for a little bit over a year, from January of 2019 until the

1    plaintiff says somewhere around March, or maybe the beginning

2    of April of 2020.

3           During that time period, in the apartment, there were

4    only two bedrooms to accommodate the two defendants in one room

5    and the plaintiff and the three -- three daughters in the other

6    room.  However, the fourth daughter was born during, like, the

7    last two or three months of when the plaintiff was living in

8    the apartment with the defendants.

9           So, the newborn daughter number four actually lived in

10   the one room with the plaintiff, and the other three girls for

11   some months before they eventually moved to the Froude Street.

12   And, the reason why that is important is that if the Court is

13   looking at this from the perspective of whether the plaintiff

14   truly had private time, that she could enjoy to herself

15   independent of the job duties, and she was free to go and do as

16   she wanted without having to go -- to be on duty, then the time

17   periods are important because clearly, the first year or so

18   that the plaintiff was living in that apartment in Surfside

19   with up to four daughters in the same room with -- including a

20   newborn, at least some of the months there, we think, is -- was

21   more restrictive.  At least, to put it mildly, than the rest of

22   her stint with the defendants where she was only staying in the

23   room with the two youngest daughters.

24           So, for whatever that is, we think that is an important

25   fact for the Court to consider, because under this statute, the

1   FLSA says an analysis has to be done on a week-by-week basis as

2   to whether or not the exemption applies.

3         So, for the first period where they were living in the

4   apartment, more cramped, with up to four daughters with the

5   plaintiff, the time is obviously more restricted than the time

6   when the plaintiff only stayed with the two youngest daughters.

7         Now, Page 74, Line 2 to 12 is not cited.  We have

8   already gone over that.  The order -- okay.

9         Now, another thing that is not cited in the court order

10  is the plaintiff's deposition testimony, Page 104, lines 16 to

11  23.

12        The plaintiff says, "Okay.  I am" -- the question is:

13        "Okay, and is that -- is that the bed, something blue

14  on top -- is that the bed that you would sleep in?

15        "A.  No, I did not sleep where I would rest, always

16  alert.

17        "Q.  Who would sleep in that bed, if not you?

18        "A.  They placed their bed there for the employees."

19        Another segment from the plaintiff's deposition that is

20  not in the court order on summary judgment is Page 106,

21  line 10, to Page 107, line 23.

22        "Q.  You were told that you had to sleep in that bed

23  during the night; is that correct?

24        "A.  Not the word sleep.  No. The bed was there for the

25  person who was in the overnight -- in the overnight shift.  The

1    bedroom was very small.  It was impossible to add a chair, and

2    another chair.

3         "Q.  Well, could you not have gone into the rest of the

4    house, either in the kitchen or one of the other rooms where

5    there was a chair, to use that, instead?

6         "A.  No. Because there are -- the two little girls are

7    there who will be asking me to take care of them at night.  My

8    function was to take care -- my function was to take care of

9    the children and not to be in the kitchen.  My function was to

10   take care of the children inside the bedroom at night so that

11   the adults could sleep.

12        "Q.  Do you see on the wall -- it looks to me like a

13   rosary.  Is that what it is?

14        "A.  Yes.  That rosary is mine.  I placed it there.

15        "Q.  You placed a rosary right over the bed where you

16   were supposed to be in; correct?

17        "A.  Yes.  It was the only wall that was white, or

18   blank.

19        "Q.  Okay.  What fan that's there -- is that your fan,

20   or did that belong to the Samuel household?

21        "A.  The Samuel household.

22        "Q.  Was there a nightstand there that you could put

23   your things in?

24        "A.  The nightstand with the lamp -- I had to have a

25   light in order to be able to give the bottle and to change the

1   diapers on the little girl.

2        "Q.  Do I understand correctly that you would turn the

3   light on when giving a bottle to the little girl while some

4   other child was sleeping in the same room?

5        "A.  Correct, because I had to see.  I couldn't give

6   her that in the darkness."

7        Also, another segment of the plaintiff's deposition

8   that the Court does not refer to in its summary judgment order

9   is Page 132, line 18, to Page 134, line 10.

10        "Q.  You previously testified that the children

11   awakened three to four times per night.  Do you recall that?

12        "A.  Yes.

13        "Q.  That can mean several different things.  Do you

14   mean that three or four times each night, one or more of the

15   Samuel children were awakened on -- were awakened on three to

16   four different occasions?

17        "A.  Look.  They would ask for water.  They would ask

18   for their mother, many a time, and I would give the bottle to

19   the little girl.  The other, her sister, "A", would wake up on

20   me.  The one who slept the best was the eldest, because the

21   "A", since she saw movies about dead people, she would always

22   wake up and -- being scared, and there was a shadow in her

23   room.  And, there was something bad in the room.  "A" --

24   meaning the daughter -- "the one that was with me, as well, she

25   was always seeing monsters in her bed, and she would scream and

1      she would yell desperately.

2            "Q.  What would you do?

3            "A.  Just imagine.  I would give her water.  I would

4      caress her and tell her to be calm.  I would close the door so

5      that she wouldn't wake up her parents because that's the reason

6      that they were paying me, so as not to interrupt the sleep of

7      Mr. Anand or Ms. Lindsey.  That was my function.

8            "Q.  But sometimes, they would escape and go to their

9      parent's bedroom; correct?

10           "A.  That was not many times, because I spoke to them

11     both, and I told them that never children, and much less

12     daughters, should sleep in the bed with their parents.

13           "Q.  Were they able to escape and go to their parents'

14     room because you were asleep?

15           "A.  I would always hear them because the doors make

16     noises.  They are the ones that always made noise.  I would

17     hear them always.

18           "Q.  Okay.  So, if the children are up and about, you

19     can hear them; correct?

20           "A.  Yes.  The house is small.  Very small.  You can

21     hear everything, the doors, everything.

22           "Q.  Does the floor creak?

23           "A.  Yes.  It is made of wood."

24           That is the plaintiff's testimony regarding what she

25     did at night.  As I have stated also in our facts, we cite to

1    Grace Trask, her testimony.  She was the other nanny that was

2    employed by the -- or working for the defendants during the

3    same time period, and she states that -- Page 35, line 18, to

4    Page 36, line 25 of her deposition, that the plaintiff would

5    not live in, that she came to work at 7:00 P.M. and left at

6    9:00 A.M. when Grace Trask arrived, and the plaintiff would

7    leave.  Grace Trask did not know where she went, but she would

8    come back when the next shift started at 7:00 P.M. the

9    following night.

10          And, the question was asked of Grace Trask, "Well, did

11   Maria ever just hang around the house after her shift was

12   over?"

13          And she said, "No. She would leave."

14          And so the question was, "Every morning, when you got

15   there at 9:00 A.M., Maria left Anand and Lindsey's house,

16   right?"

17          And the answer was "Yes."

18          And, when we asked Grace Trask at Page 40, Line 24 to

19   Page 41, Line 6, "Did Maria ever live in the home with Lindsey

20   and Anand?"

21          The answer was "no."

22          "Q.  Okay.  Was there a room for anybody to live there?

23          There was no room for anybody to live there, right?

24   That was outside of the family, because there was only three

25   bedrooms, right?

1        "A.  Yes."

2        Page 47, line 15 to 23.

3        "Q.  Okay, now, what was Maria Blanco's job duties?

4   What were her job duties while she worked there from the end of

5   January 2019 for her entire work for Anand and Lindsey?

6        "A.  Put the girls to bed and then just, like, duties

7   around the house, like dishes, laundry, clean up the house,

8   make sure everything is, like, in order for the morning.

9        "Did Maria Blanco ever live-in with Anand and Lindsey

10  and their children?

11       "A.  No. And that was at Page 52, line 25, to Page 53,

12  Line 2.

13       And these are -- these are nannies that do this for a

14  living.  I mean, they know what a live-in nanny is and what is

15  not.

16       And I think -- I know the Court says it doesn't want to

17  look for the dictionary definition of some of these terms, but

18  I think that in reviewing the DOL preamble to the purpose of

19  the regulatory action, and even deeper into that document, the

20  commonsense usage of these words is something that I believe is

21  encouraged.  And, no other case has ever -- that I have been

22  able to find has any factual pattern like this, where there is

23  a nanny who is always with those kids in a room, and where an

24  employer claims that they are live-in exempt employees that has

25  free time to do whatever they want as contemplated by the

1    regulation.  So, this case would be a real stretch if the Court

2    was to find that that exemption was to apply under that

3    particular fact where there was no free time for the plaintiff

4    independent of her job duties that she was engaged to do for

5    the defendants.

6            And, that was the import of Grace Trask's deposition.

7    And we -- I think that we also cited this in our Motion for

8    Summary Judgment, Page 83, lines one to 11, Page 84, lines 13

9    to 20, Page 90, lines 10 to 25, where we asked her, "Did Maria

10   ever hang out at the house after her shift was over?"

11           And Grace Trask said, "No, she would just, like, make

12   breakfast, coffee in the morning before she left, but never

13   watch TV."

14           "Was she always out of the house by 9:00 A.M.?"

15           "Yes."

16           "Just like because that's when her shift ended, she

17   wanted to get out of the house, right?"

18           "Yes."

19           And, that was Grace Trask's testimony.

20           Once again, from the defendants' depositions, trying to

21   focus on what the plaintiff did at night, Lindsey Finch states

22   -- the import of her deposition is that she does not know, she

23   does not remember, she does not know what the plaintiff was

24   doing with the children.

25           Page 105, line 16 to 20:

1          "Q.  All right, now.  So, how would you describe what

2     Maria did, what job she did, she had while she was working for

3     you and your children and family?

4          "A.  I don't know."

5          Lindsey Finch's deposition, Page 110, line 15 to

6     Page 111, line 8:

7          "Well, you said before that the only requirement for

8     Maria Blanco was to be physically present in your home with

9     your children.  Do you remember saying that?

10         "A.  It wasn't a requirement for her.  I just said --

11    just needed someone.  If she showed up, great."

12         "Q.  Okay.  That was the only requirement for any nanny

13    or housekeeper that you had to come to be with your children in

14    your home; correct?

15         "A.  I don't know, I guess.

16         "Q.  Do you remember any other requirements that you

17    had for any other workers that came to your house to be with

18    your children other than to just be physically present with

19    them and nothing else?

20         "A.  I don't remember."

21         And this is how the rest of her deposition went.  It is

22    -- we cited to that in our material facts in conjunction with

23    our own motion for summary judgment.

24         So, here, the defendants have the burden of proving

25    this exemption, and the import of their sworn testimony is that

1    they don't know what Maria did.  So, we think that at a very

2    minimum -- and just looking at these regulations, I just want

3    to go over these very briefly with the Court, if I can.

4         The DOL, in this 2013 letter cites to C.F.R. -- 29

5    C.F.R. 78523, where it says, "Where an employee resides on the

6    employer's premises permanently or for extended periods of

7    time, not all of the time spent on the premises is considered

8    working time."

9         And then it cites to Section 552102, and 755.23.

10        Then it goes on to -- that regulation says, "Such an

11   employee may engage in normal private pursuits and thus have

12   enough time for eating, sleeping, entertaining, and other

13   periods of complete freedom from all duties where he or she may

14   leave the premises for his or her own purposes."

15        And, that's where we believe that the defendants cannot

16   meet this definition of a live-in employee.  I mean, none of

17   that applies to what the plaintiff did in this case for this

18   family.  She did not enjoy any periods of private time, enjoy

19   on her own.  And, I think that if the Court is to use 785.23,

20   where it says that where an employee resides on the employer's

21   premises permanently or an extended period of time, not all the

22   time spent is considered working time, that is where the

23   inquiry should end.  I mean, that shows that the plaintiff did

24   not reside on their property for the -- in their home for the

25   purposes of this exemption because she was working at all times

1    that she was there.  I know that the Court cites in the summary

2    judgment order that just because the defendants decided to pay

3    the plaintiff for all of her hours during her 14-hour shift, it

4    doesn't mean her time was necessarily compensable.  But, that

5    is not what the regulations say.  Because the plaintiff was

6    working less than 24-hour shifts, these regulations required

7    that time be paid and be compensable.

8         This was not some gratuitous act on behalf of the

9    defendants, or altruistic deed.  They had to pay for it because

10   she was only working shifts that were less than 24 hours, and

11   she was working under 120 hours a week.  So, because all of her

12   time was compensable, because she had no freedom to do what she

13   wanted to do, or to leave the premise like a normal live-in

14   worker, we don't believe that this -- that this statute should

15   apply, or the exemption can apply to the plaintiff.

16        But, at a minimum -- and I underscore "at a minimum,"

17   if the Court is interpreting this to mean that if the plaintiff

18   works and sleeps on the employer's premises for less than

19   120 hours a week for five consecutive days or nights, that this

20   rule can apply, then at a minimum, there is a factual issue

21   based on the plaintiff's testimony as to what she did at night.

22   If -- her testimony is the only testimony as to what her

23   particular job duties were with that type of detail.  But, if

24   the Court finds that that is a credibility determination for a

25   jury, whether or not she was constantly alert as to these

1   children that she slept with in small quarters in the same

2   room, then that should be a jury determination of what "sleep"

3   means, because "work and sleeps," these regulations also speak

4   to that, as well, what sleep time is.

5        And, if we look at the DOL Field Assistance Bulletin

6   number 2016-1 -- and I have shared these with opposing counsel

7   prior to the hearing -- we see that the DOL defines sleep as

8   "being able to enjoy an uninterrupted night's sleep."

9        And, I think that this is important because the DOL

10  regulations cannot be just looked at under a microscope without

11  looking to other language in the same regulations when the

12  pertinent regulation doesn't contain a direct definition of

13  what sleep time is.

14       But, the DOL -- and I am quoting from this

15  regulation -- it says that "The Department believes that this

16  interpretation allows employers flexibility because it does not

17  require that the employee have eight hours of uninterrupted

18  time to consider the night uninterrupted, but, reflects the

19  reality that a worker -- that a worker who is not permitted to

20  at least five hours in a row of uninterrupted sleep cannot be

21  said to have gotten a meaningful night's sleep."

22       And then the DOL goes on to another regulation that

23  says that even if the five hours are broken up somewhat during

24  the night, but not several enough to make it an meaningful

25  night's sleep -- or something to that effect -- then that can

1    also count.

2         But, based on the plaintiff's sworn testimony, I don't

3    see how, especially for summary judgment purposes, it could

4    rightfully be concluded that the plaintiff -- that the

5    defendant has established that the plaintiff had five hours of

6    uninterrupted sleep each night.  I don't think that there is

7    testimony that would support that.  And, I know the Court

8    referenced that in my pleadings, I referenced to "the plaintiff

9    slept," but my intention was, not by using the word "sleep," to

10   convey that the plaintiff engaged in activity that would

11   trigger this exemption.  Maybe I chose that word, maybe I

12   should have said "stayed."

13        But really, she was there.  The plaintiff said that at

14   times, she would doze off.  She can't say she never slept.

15   But, if you look at the import of the plaintiff's testimony,

16   rather than the semantics of what is written in the pleadings

17   as to the word "sleep," I think it is clear that the

18   plaintiff's testimony shows that her time was severely

19   restricted with those kids to even an expanded view of this DOL

20   regulation where the worker works and sleeps on the premises;

21   that "sleeps" cannot be established as a matter of law, we

22   don't believe, for the purposes of summary judgment, because

23   her time was so restricted.

24        Sleep has to mean something other than just dozing off,

25   or having -- having, you know, a snooze or something like that.

 1             And, that's why we look to the DOL regulations to

 2     define sleep.  And, every time it is defined, at least what I

 3     have found is that it has to be a meaningful night's sleep that

 4     the defendant considers five hours of uninterrupted sleep, or

 5     at least five hours throughout the night that are

 6     uninterrupted, even if they are not completely consecutive.

 7             If we go to the DOL Fact Sheet 79B, that is also

 8     instructive, as well, because this regulation came out in

 9     response in September of 2013, after this DOL final rule was

10     promulgated, and it says that -- and I want to also underscore

11     the fact that this 2013 DOL final rule did not invent this rule

12     for workers that reside on the employer's premises for less

13     than 120 hours a week can be considered exempt.  This is a

14     longstanding rule.  This did not just all of a sudden get

15     created in the 2013 DOL letter.  This goes back decades before

16     that.

17             The Department says in their DOL Fact Sheet 79B -- it

18     uses an example of an employee who resides on the employer's

19     premises five consecutive days from 9:00 A.M. Monday until 5

20     P.M. Friday, "(Sleeping four consecutive nights on the premises

21     is residing on the premises)."

22             And then it uses an example.  "A worker who resides on

23     the employer's premises five consecutive nights from 9 P.M.

24     Monday to 9 A.M. Saturday, sleeping four straight days on the

25     premises is considered to reside."

1          The DOL, in their fact sheets, are clear that sleeping

2    has to be something different than the employer -- than the

3    employee's main job.  And it is -- that is the only meaningful

4    definition of sleep.  Otherwise, if -- if the regulation was to

5    mean that an employee could work and sleep at the same time, it

6    wouldn't make any sense.  How can an employee work and sleep at

7    the same time?

8          Why would the Department have said working and sleep?

9    It should have said working while sleeping, or something like

10   that.  But, however the Court analyzes it, these are two

11   separate events.  The work and the sleep have to be separate.

12   Once again, the -- because the plaintiff works shifts less than

13   24 hours, the time is compensable.  It cannot be exclude under

14   the DOL regulations.

15         If we go to fact sheet 79D --

16         THE COURT:  I will give you -- you are way past the

17   time.  I will give you one more minute.

18         MR. ZIDELL:  I would point the Court to Fact Sheet 79D,

19   where it states that it is -- actually speaks to a nanny who

20   must watch over her charge even when she is sleeping, that

21   those hours are to be counted as hours of work.  And that is a

22   specific example used in 79D.  And, that fact sheet came out in

23   April 2016, well after this 2013 DOL opinion was promulgated.

24         Just to conclude, reviewing all of the cases that we

25   have cited, if a court ever found this -- this regulation to

1    exempt an employee, based on my research, it had to be that the

2    employee could enjoy a good night's sleep on their own without

3    having to be alert on duty all the time like the plaintiff was

4    in this case.

5         And so we would ask, at a very minimum, that the Court

6    deny summary judgment and perhaps even reconsider finding that

7    this rule cannot apply to the plaintiff's work as a matter of

8    law.

9         Thank you.

10        THE COURT:  All right.  Mr. Beutler?

11        MR. BEUTLER:  Thank you, your Honor.

12        I was not planning to discuss the law on the living

13   exemption except, perhaps, basics.  But, if the Court has any

14   questions, I am prepared to answer them right now, today.

15        Based on what Mr. Zidell said, I would like to address

16   a few points where the sleep time exclusion rules are being

17   used to confuse the issue on the exemption.  We laid out our

18   argument in our briefs.  The Court appears to have accepted our

19   arguments.  I have no disagreement with the Court's analysis.

20        There are three elements to the live-in domestic

21   employees overtime exemption.  The pretrial stipulation takes

22   care of the first two elements even though they were never an

23   issue; the plaintiff is a domestic worker employed in the

24   household.  The question is does she reside in that household

25   as defined by the Department of Labor and the statute and

1   regulations?

2          The Court has ruled, based on the DOL final rule,

3   interpretive guidance and case law and documenting law that if

4   the employee works and sleeps on the employer's premises five

5   consecutive days or nights, she resides there for a -- an

6   extended period of time, and this falls under the OT exemption.

7   That was the Court's order on Page 7.

8          Now my understanding of the Court's directive to the

9   parties was to address whether the Court can enter summary

10  judgment based on the plaintiff's acknowledgment of certain

11  fact in its briefs, oral arguments and statements of material

12  facts.

13         It can, for several reasons, which I will get to.  Let

14  me start by saying there is nothing untimely about the

15  defendant's request under Rule 56F1.  I simply alerted the

16  Court that the citation was available.

17         But, more importantly, we are not trying to exploit an

18  unintended misstatement made by opposing counsel.  There is no

19  "gotcha" going on here.  Mr. Zidell has changed or written in

20  different contexts the same story in this case, over and over

21  again.  The statements are unequivocal, deliberate, voluntary,

22  and they are intended to be relied on.

23         The plaintiff slept at the house during the nights when

24  she was scheduled to be there.  Mr. Zidell volunteered these

25  facts himself, with no prodding by defendants; at times, going

1    out of his way to make his point that the plaintiff was

2    sleeping on the premises.  All of this was done over and over.

3           Now, the Court identified some of these admissions, but

4    the Court did not identify all of them.

5           Now, let's talk about the statement of material facts.

6    The Court has identified paragraph seven.  During the

7    nightshift, the plaintiff stayed in her room with the two

8    youngest children.  The plaintiff always slept with the

9    defendants' two youngest daughters at the Froude home.  At the

10   Harbour House Condo, the plaintiff slept in the room with --

11          THE COURT REPORTER:  I am sorry, counsel.  If you could

12   please slow down --

13          MR. BEUTLER:  I will endeavor to do that.

14          The plaintiff slept in a room with all of the

15   defendants' children like Shana Tompkins, the prior nanny had

16   done.

17          The Court also observed Paragraph 79, plaintiff's sleep

18   time with the defendants' children is compensable time.

19          But, the Court overlooked -- I think the Court

20   overlooked this one.  Plaintiff's reply to the Statement of

21   Material Facts -- that's docket entry 59, Page 7,

22   paragraph 115.  This is what Mr. Zidell wrote in his reply to

23   this Court.

24          "It is undisputed that the plaintiff never complained

25   of lack of sleep as that is, specifically, one of the things

1    she was hired for; to sleep with and tend to the defendants'

2    children during the night shift."

3            Now the statement of material facts lists the facts

4    that the movant contends are not genuinely disputed.  Under

5    local Rule 56.1, facts not covered are deemed admitted.  That

6    is what we have here.  The plaintiff alleges facts.  The

7    defendant did not controvert them.  That is what we have here.

8            That is an admission.  That is what Rule 56.1 mandates,

9    and I see no reason why the Court should disregard that rule.

10   If the Court is going to deem unrebutted facts and a statement

11   of material facts against a nonmoving party, for purposes of

12   summary judgment, it makes even more sense to deem it admitted

13   against the moving party -- facts that the moving party

14   affirmatively proffered with no prompting whatsoever.

15           Now, so the rules is clear, as your Honor, I am sure,

16   knows, all material facts in a party's statement of material

17   facts may be deemed admitted unless controverted, provided that

18   the Court find the material fact at issue is supported by

19   record evidence.

20           The fact that the plaintiff slept at the residence each

21   night is amply supported in the record that was filed with the

22   Court.

23           Now, it is going to take a while to go through all of

24   them, but I will try to be brief.

25           By all means, tell me to speed up or slow down.

1          THE COURT:  I am not going to tell you to speed up.  I

2    am going --

3          MR. BEUTLER:  I'm sorry?

4          THE COURT:  I am not going to tell you to speed up, but

5    you have a total of 20 minutes, which you have used five.

6    So --

7          MR. BEUTLER:  Well, there is the -- Trask deposition

8    that is 43-5, Page 42.

9          "All right.  And then when Maria came in" --

10         THE COURT:  You are not slowing down.  You are not even

11   endeavoring to slow down.

12         MR. BEUTLER:  That's correct.  I will try hard.

13         "Mr. Zidell:

14         "Q.  When Maria came and moved into the family home at

15   the end of January 2019, who were the girls that Maria would

16   always sleep with in the bedroom during the night shift?

17         "A.  The two youngest."

18         And then the names are provided.

19         "Q.  Okay.  And did Maria always sleep with the same

20   two children of Anand and Lindsey every single night?

21         "A. Yes."

22         Page 47.

23         "Mr. Zidell:

24         "Q.  And then the younger two daughters always slept

25   with Maria Blanco in the second bedroom.  Right?

1          "A.  Yes."

2          Page 59.

3          "Mr. Zidell:

4          "Q.  So, when Maria was coming to the Harbour House to

5     work for Anand and Lindsey, was she sleeping with two of the

6     children then, or more than two of the children?

7          "A.  With three.

8          "Q.  So, in the Harbour House, Maria was actually

9     sleeping with three of Anand and Lindsey's children all the

10    time in that other bedroom; correct?

11         "A.  She slept with three of them because the baby, the

12    fourth one slept with the mom, and they slept with the mom

13    until she sent them out.  When she went to work, she left them

14    with the nanny.

15         Page 61 -- I'm sorry.  Page 101, by me.  I am

16    questioning the nanny, Ms. Trask.

17         "Q.  Do I understand correctly that Ms. Blanco worked

18    at the Samuel-Finch residence?

19         "A.  Yes.

20         "Q.  Did she sleep there?

21         "A.  Yes.

22         "Q.  And how many nights a week would she sleep there?

23         "A.  Five.

24         "Q.  Consecutive?

25         "A.  Yes.

1          THE COURT:  And did the plaintiff, in her deposition,

2     ever say what she was doing when she would leave and go home to

3     her aunt's house during the day?

4          MR. BEUTLER:  She did say she left.  Sometimes, she

5     went to gymnastics.  Sometimes, she went to her doctor's.

6     Sometimes, she went for a walk.  And she did say she went there

7     and rested.

8          THE COURT:  And did she ever say she slept there?

9          MR. BEUTLER:  Did she ever say she -- she slept where,

10    at the --

11         THE COURT:  At her house.  Like, she would leave at

12    nine in the morning.  Did she ever say, "I was so tired because

13    I didn't sleep at the Anands, and I went home and slept for

14    five uninterrupted hours"?

15         MR. BEUTLER:  I don't think she put it that way.  I

16    think she did say -- she may have said in her deposition that

17    she slept at her aunt's house.

18         THE COURT:  Okay.

19         MR. BEUTLER:  The other nanny -- we have done one

20    nanny.  There is one more.

21         Ms. Gomez, Page 57.

22         "Q.  Did Maria always sleep with the two" -- that's

23    43-6 -- "did Maria always sleep with the two youngest daughters

24    of Anand and Lindsey when she took over Shane's job after Shane

25    passed away?

1          "A.  Correct.

2          "Q.  And then when the family moved to the Froude house

3   in Surfside, that house had three bedrooms and two bathrooms,

4   right?

5          "A.  Correct.

6          "Q.  And the Froude house, Maria slept -- always had

7   the two youngest children of Anand and Lindsey, and the other

8   two children slept in the third bedroom, correct?

9          "A.  Correct."

10         I don't want to go through all of them, but there is a

11  similar admission on Page 77, and there is another one on

12  Page 79.

13         And then my cross of Ms. Gomez, Page 82.

14         "Q.  Very briefly, Ms. Blanco worked at the residence

15  where Anand and Samuel (sic) lived, correct?

16         "A.  Yes."

17         THE COURT:  You need to slow down.

18         "A.  She worked nighttimes from Sundays to Fridays."

19         That was the answer.

20         "Q.  And she would sleep there too; correct?

21         "A.  Yes.

22         "Q.  Five consecutive days?

23         "A.  Yes."

24         Now, I don't want to take the Court's entire day,

25  but --

1          THE COURT:  I can assure you that you will not.

2          MR. BEUTLER:  Okay.  There is more where that came

3   from.

4          There's Mr. Samuel's declaration.  There is Ms. Gomez's

5   declaration.  There is Dr. Finch's declaration, and then there

6   is Mr. Samuel's deposition, 43, 1, pages 86 and 89 where they

7   all four testified that Ms. Blanco slept at the premises.

8          And the other -- the other nannies, they also, from

9   time to time, were pressed into service to do the nightshift,

10  and they said they slept and that the children did not wake

11  them up.  They slept the entire night, and they slept from ten

12  to seven.  Now, Ms. Blanco did testify, Page 57 in her

13  deposition that, generally speaking -- I asked her, "Would

14  Mr. Samuel put the children to bed?

15          "A.  Yes.  He would go to the eldest girl's -- he would

16  go with the eldest girls to their bedroom.  He would turn on

17  their meditation music.  They would relax and they would fall

18  asleep.

19          "Q.  And what about the younger children?

20          "A.  Generally speaking, the younger girls, since they

21  were younger, when they fell asleep, they would not wake up

22  until there was a noise.  They would get their -- pacified."

23          Anyway, my point is that this case can be resolved on

24  summary judgment, based on plaintiff's own admissions.  And, as

25  I have just explained, those admissions are amply supported by

1    the record evidence, and that's under local Rule 56.1.

2         But, there is another avenue for entering summary

3    judgment.  Putting aside the summary judgment pleading, the

4    statement of material facts, the plaintiff's brief, 43-5 makes

5    similar admissions.

6         Page 2 -- Page 7.  The Court has already read that and

7    cited that in their order.  This is a reply memorandum.  Page 3

8    and 4.  DE 58.  She, Ms. Blanco, was a night nanny whose job

9    specifically was to sleep and tend to the children.

10        The admissions, in brief, of a party opposing a motion

11   for summary judgment are functionally equivalent to admissions

12   of facts on file and, as such, they may be used in determining

13   the presence of a genuine issue of material fact.

14        That is United States versus Juan Heckler-Koch Rifle,

15   629 F.2d 1250, jump cite to 1253 -- that's a 7th Circuit

16   decision.

17        There is still a third avenue for entry of a summary

18   judgment.  The Court may not be aware of this, but there was a

19   discovery hearing before Magistrate Judge Goodman.  That

20   transcript was filed by Mr. Zidell.  It is at 4313, Page 9.

21        "The Court:  Let me make sure I understand this factual

22   pattern correctly.  Your client, the plaintiff, Ms. Blanco,

23   would typically, in the evenings, sleep in the same bedroom

24   with the minor children?

25        "Mr. Zidell:  Yes.  At that time, the defendants had

1    four minor children.  They had a three-bedroom house.  The

2    parents slept in the master bedroom.  The plaintiff slept with

3    two of the four minor children in the second bedroom, and then

4    the other two daughters who were also minors, small children,

5    slept in the third bedroom alone in that time period.

6         "The Court:  That was her job, to basically sleep with

7    them in the room?

8         Is that part of your theory?

9         "Mr. Zidell:  That is certainly part of our theory."

10        Page 8.

11        "The Court:  Was there anyone else on this nightshift,

12   or was it your client, Ms. Blanco, and the children?

13        "Mr. Zidell:  Well, the male defendant, Mr. Samuel,

14   from what we can tell, was a lot of the time at home during

15   those hours.

16        "The Court:  I see.

17        "Mr. Zidell:  And, he was sleeping in the bedroom that

18   was about 15 to 20 feet or so away from where the plaintiff

19   slept with these two daughters and those two daughters that the

20   defendant had."

21        Now, a statement made by an attorney during oral

22   argument are binding judicial admissions and may form the basis

23   for deciding summary judgment.

24        There are several cases that support that, and Halifax

25   Paving, Inc., versus U.S. Fire Insurance Company, 482 F Supp.

1    2d 1331, jump cite 1336.

2           And, there is another case, it is Pinsweet Corp.,

3    versus General Motors Corp.

4           That Halifax case is a Middle District decision.

5           That is 2021 Westlaw 914170 at Page 3, note 6.  It

6    collects authority for that proposition that a party can be

7    held to concessions and admissions counsel made at oral

8    argument.  "Litigants can be held to concessions or admissions

9    of fact they make before a District Court."

10          That is the 11th Circuit opinion.

11          And Amergi ex rel. Amergi versus Palestinian Authority,

12   611 F.3d 1350, jump cite 1359, 11th Circuit, 2010.

13          So, the Court has three avenues to enter summary

14   judgment.  Summary judgment can be entered against the

15   plaintiff under 56.1 Local Rule, for the admissions made in the

16   statement of material facts, "Admissions of a brief opposing a

17   motion are functionally equivalent to admissions on file and

18   they may be used to determine the presence of a general issue

19   of material fact."

20          And, finally, summary judgment can be entered against

21   plaintiff because litigants can be held to concessions or

22   admissions of fact that they make before a District Court.

23          Now, again, the evidence is overwhelming that we have

24   four witnesses, all of them who said Ms. Blanco slept there.

25          Let me get away for a moment in the legal argument and

1   address what is really going on here.

2          Mr. Blanco -- Ms. Blanco is in the bedroom at night.

3   There is only room for beds.  There is no chair.  The lights

4   are out.  The door is closed.  You can't make any noise because

5   the children are sleeping in the same room.  There is no noise

6   other than Ms. Blanco snoring.

7          She is sleeping.  There is nothing else she can do in

8   that room.  Dr. Finch comes and goes in the middle of the night

9   when her residency responsibilities require.  She checks on her

10  children.  She listens at the door, snoring.

11         She never comes home at 3:30 in the morning, or rises

12  to go to work to find that Ms. Blanco is doing something else

13  in the middle of the night.

14         She is not sitting at a kitchen table or the living

15  room reading a book.

16         And, same for Mr. Samuel.  He checks on the kids.

17  Listen to the door, snoring.

18         He accidently locks himself out.  He rings the

19  doorbell.  He calls Ms. Blanco on her phone.  She does never

20  awaken.  He has to bang on her window.

21         When the smoke alarm goes off, he has to bang on the

22  bedroom door to awaken her.  She sleeps, apparently, very

23  deeply.

24         Now, why are we talking about the sleep time exclusion

25  rules?

1          Because the plaintiff is trying to conflate that second

2     set of rules.  It has been tried before.  The Courts have been

3     overruled for doing that.  The sleep time exclusion rules can

4     apply to domestic employees, but you do not need to be a

5     domestic employee to have your sleep time excluded.

6          You can be working on an oil rig.  You can be a

7     fireman.  To exclude any amount of sleep time, you have to,

8     either way, reside at the employer's premises or, B, work

9     24-hour shifts.

10          Now, assuming you're proceeding under Option A, which

11     everyone agrees we are, the same rules for residing in applies

12     to sleep time exclusion as to the OT, overtime exemption, a

13     permanent basis or an extended period of time.  Work and sleep

14     five consecutive days or night.  You do not get to exclude

15     sleep time if you don't follow the rules.  But, you are

16     residing on the employer's premises, and we can -- okay.

17          Whether or not you get to exclude sleep time is a

18     different question as to whether or not you are residing in the

19     premises.  And, I have a chart which has helped me greatly.  It

20     is a very rough chart that I -- it is a logic diagram I would

21     like to provide the Court -- I will provide it to opposing

22     counsel, as well -- which sort of shows how the law of logic

23     works here.

24          But, the point is that, you know, something undercover,

25     not dealing with a 24-hour shift situation, if you are asking

1    the question, can sleep time be excluded by agreement, and that

2    depends on whether there is adequate lodging, private quarters,

3    home-like environment, sleep interruptions, or whether, you

4    know -- you have already crossed that bridge.  You have already

5    concluded that the party -- that the employee is residing in.

6    If the agency regulation or the Court's decision is even

7    entering into that inquiry, that bridge has already been

8    crossed.  You have already determined that the employee is

9    residing in.  Otherwise, it would make no sense to do that.

10          And, the -- depending on the outcome of those

11   questions, do we have adequate lodging, do we have private

12   quarters, home-like environment, sleep interruptions -- you may

13   conclude that no time can be excluded, or that some time can be

14   excluded.  But, regardless of the outcome of that, you don't

15   lose your status as a person, an employee residing in the

16   employer's premise.

17          And, I think that is the problem with these two -- with

18   plaintiff's argument, is that there is an effort to conflate

19   those two sets of rules.

20          So, if it fails to meet the requirements for excluding

21   sleep time, well, then you don't get to exclude sleep time.

22   But it doesn't mean you are not a live-in domestic employee.

23          THE COURT:  All right.

24          Mr. Zidell, I will give you three minutes to rebut.

25          MR. ZIDELL:  Thank you, Judge.  There is no conflating

1    going on here.  What I am doing is that -- in the exemption

2    part of the DOL rule, there is no direct definition of what

3    sleep time is.  There is a definition in the DOL bulletin

4    2016-1, and that defines sleep, which is -- far precedes the

5    2013 DOL rule.  That rules says that sleep means a meaningful

6    night's sleep of at least five consecutive hours of sleep that

7    can be interpreted to be five different hours, as long as they

8    are meaningful and uninterrupted to a certain degree.

9         I am saying that there is at least a factual issue in

10   this case because the defendants are burden-bound to prove this

11   exemption.  This is not my duty on behalf of plaintiff to

12   disprove it.

13        They never filed a motion for summary judgment.  If the

14   evidence is so overwhelming, why couldn't this case,

15   procedurally, have happened like every other case on exemption

16   where the defendant is going to move to summary judgment and

17   does so?

18        The defendant didn't do it.  Mr. Beutler is a very

19   well-schooled labor law attorney.  He knows, based on what the

20   plaintiff said in her deposition, summary judgment can't be

21   granted; furthermore, should not be granted for them because

22   the time was too restricted based on what the plaintiff said.

23        And, she is her anchor in this case because nobody else

24   knows what went on in that room except for their children.  And

25   we didn't depose the children for obvious reasons.

1         But, based on what the plaintiff said, she did not have

2    uninterrupted sleep at all in that room, much less five hours.

3    And, the defendant certainly has not proven that for the

4    purposes of summary judgment.  So, thank you.

5         THE COURT:  All right.  So, I am going to take this

6    matter under advisement.  Obviously, if I end up granting

7    summary judgment, we don't have to worry about the trial date.

8         But, assuming I deny the summary judgment, have you all

9    discussed a different date?

10         MR. BEUTLER:  We have discussed it to the extent we

11    both agree that September will not work.

12         THE COURT:  Okay.  So, then that brings us to October.

13    So, I have a calendar call October 4th, nine o'clock --

14         MR. ZIDELL:  Your Honor, I am sorry to interrupt.  Can

15    I call my office, or can we contact your judicial assistant

16    later in the day after we coordinate this because I don't want

17    to speak out of turn and then call saying I have a conflict.

18         THE COURT:  So why don't you do that, and let me know.

19         MR. BEUTLER:  Your Honor, I have a better idea.  If you

20    will just tell us, for the next several months, when your jury

21    periods are, I will confer with Mr. Zidell and we will try to

22    find an agreeable spot on the calendar.

23         THE COURT:  Okay.  So, I will just give you -- so,

24    October 10th, that Monday, and then every two weeks there is

25    another two-week trial period.  So, it is October 10th,

1    October 24th, November 7th, November 21st, December 5th,

2    December 19th.

3         What about Mr. Beutler's suggestion about going back to

4    mediation, or scheduling this for settlement conference?

5         Is that something that -- at least, since it is going

6    to be at least a month or more before the trial.

7         MR. ZIDELL:  Whatever the Court prefers.  We had a very

8    long mediation recently in this case.  We have had ongoing

9    talks about the resolution.  But, if the Court feels that is

10   necessary, then if the Court is going to do it, we would ask

11   for a private mediation rather than encumbering Judge Goodman's

12   time with the matter.  But, that is up to the Court.  So --

13        THE COURT:  Okay.  All right.  Well, let's send me

14   first your dates, your agreed-upon trial dates and then I --

15   again, it is only if I end up not granting the motion.

16        MR. BEUTLER:  Your Honor, we are amenable to a private

17   mediation, but we would prefer a settlement conference before a

18   magistrate judge.

19        THE COURT:  All right.  Thank you.

20        MR. BEUTLER:  Thank you, your Honor.

21        THE COURT:  Thank you all for your presentations.

22        All right.  We are in recess.

23        (Proceedings concluded at 10:08 a.m.)

24

25

```
 1                          _    _    _

 2                    C E R T I F I C A T E

 3

 4           I hereby certify that the foregoing is an

 5   accurate transcription of the proceedings in the

 6   above-entitled matter.

 7

 8   August 29, 2022       /s/Sharon Velazco
     DATE                   SHARON VELAZCO, RPR, FPR
 9                          Official Court Reporter
                            United States District Court
10                          400 North Miami Avenue
                            8th Floor
11                          Miami, Florida 33128

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**'**

**'sleep** [1] - 10:11

**/**

**/s/Sharon** [1] - 45:8

**1**

**1** [2] - 1:7, 35:6
**10** [4] - 7:23, 13:21, 15:9, 19:9
**101** [1] - 32:15
**104** [1] - 13:10
**105** [1] - 19:25
**106** [1] - 13:20
**107** [1] - 13:21
**10:08** [1] - 44:23
**10:30** [1] - 10:7
**10th** [2] - 43:24, 43:25
**11** [1] - 19:8
**110** [1] - 20:5
**111** [1] - 20:6
**115** [1] - 29:22
**11th** [2] - 38:10, 38:12
**12** [2] - 10:13, 13:7
**120** [6] - 5:5, 5:9, 5:21, 22:11, 22:19, 25:13
**1250** [1] - 36:15
**1253** [1] - 36:15
**13** [1] - 19:8
**132** [1] - 15:9
**1331** [1] - 38:1
**1336** [1] - 38:1
**134** [1] - 15:9
**1350** [1] - 38:12
**1359** [1] - 38:12
**14-hour** [1] - 22:3
**15** [4] - 10:5, 18:2, 20:5, 37:18
**16** [4] - 9:16, 9:17, 13:10, 19:25
**18** [2] - 15:9, 17:3
**19** [1] - 11:3
**1974** [1] - 4:16
**19th** [1] - 44:2
**1:21-cv-24023** [1] - 1:2

**2**

**2** [5] - 9:17, 10:13, 13:7, 18:12, 36:6
**20** [4] - 19:9, 19:25, 31:5, 37:18
**2010** [1] - 38:12

**2013** [9] - 4:5, 4:13, 5:20, 21:4, 25:9, 25:11, 25:15, 26:23, 42:5
**2015** [1] - 4:14
**2016** [1] - 26:23
**2016-1** [2] - 23:6, 42:4
**2019** [4] - 11:21, 11:25, 18:5, 31:15
**2020** [1] - 12:2
**2021** [1] - 38:5
**2022** [2] - 1:4, 45:8
**21st** [1] - 44:1
**23** [5] - 1:4, 10:5, 13:11, 13:21, 18:2
**24** [3] - 17:18, 22:10, 26:13
**24-hour** [3] - 22:6, 40:9, 40:25
**24th** [1] - 44:1
**25** [3] - 17:4, 18:11, 19:9
**27** [2] - 10:8, 10:22
**29** [2] - 21:4, 45:8
**2d** [1] - 38:1

**3**

**3** [3] - 11:3, 36:7, 38:5
**300** [1] - 1:12
**33128** [2] - 1:23, 45:11
**33141-3089** [1] - 1:13
**33156** [1] - 1:17
**35** [1] - 17:3
**36** [1] - 17:4
**3:30** [1] - 39:11

**4**

**4** [1] - 36:8
**40** [1] - 17:18
**400** [2] - 1:22, 45:10
**41** [1] - 17:19
**42** [1] - 31:8
**43** [1] - 35:6
**43-5** [2] - 31:8, 36:4
**43-6** [1] - 33:23
**4313** [1] - 36:20
**47** [3] - 8:1, 18:2, 31:22
**482** [1] - 37:25
**4th** [1] - 43:13

**5**

**5** [2] - 7:22, 25:19
**52** [1] - 18:11

**53** [1] - 18:11
**552102** [1] - 21:9
**56.1** [4] - 30:5, 30:8, 36:1, 38:15
**56F1** [1] - 28:15
**57** [2] - 33:21, 35:12
**58** [1] - 36:8
**59** [2] - 29:21, 32:2
**5th** [1] - 44:1

**6**

**6** [2] - 17:19, 38:5
**600** [1] - 1:17
**605** [1] - 1:12
**61** [1] - 32:15
**611** [1] - 38:12
**629** [1] - 36:15
**67** [1] - 7:22
**68** [1] - 7:23

**7**

**7** [3] - 28:7, 29:21, 36:6
**70** [1] - 9:16
**71** [1] - 9:17
**71st** [1] - 1:12
**73** [1] - 10:5
**74** [2] - 10:13, 13:7
**755.23** [1] - 21:9
**77** [1] - 34:11
**785.23** [1] - 21:19
**78523** [1] - 21:5
**79** [5] - 5:10, 6:16, 8:1, 29:17, 34:12
**79B** [2] - 25:7, 25:17
**79D** [3] - 26:15, 26:18, 26:22
**7:00** [2] - 17:5, 17:8
**7:30** [1] - 10:6
**7th** [2] - 36:15, 44:1

**8**

**8** [2] - 20:6, 37:10
**82** [2] - 11:3, 34:13
**83** [1] - 19:8
**84** [1] - 19:8
**86** [1] - 35:6
**89** [1] - 35:6
**8:40** [1] - 1:5
**8th** [2] - 1:22, 45:10

**9**

**9** [3] - 25:23, 25:24, 36:20
**90** [1] - 19:9
**914170** [1] - 38:5

**9400** [1] - 1:16
**9:00** [6] - 6:1, 6:6, 17:6, 17:15, 19:14, 25:19
**9:15** [1] - 1:5

**A**

**A.M** [8] - 6:1, 6:7, 10:6, 17:6, 17:15, 19:14, 25:19, 25:24
**a.m** [3] - 1:5, 44:23
**able** [7] - 9:3, 9:9, 9:11, 14:25, 16:13, 18:22, 23:8
**above-entitled** [1] - 45:6
**accepted** [1] - 27:18
**accidently** [1] - 39:18
**accommodate** [1] - 12:4
**accurate** [1] - 45:5
**acknowledgment** [1] - 28:10
**act** [1] - 22:8
**action** [1] - 18:19
**activity** [1] - 24:10
**add** [1] - 14:1
**address** [5] - 3:18, 5:13, 27:15, 28:9, 39:1
**adequate** [2] - 41:2, 41:11
**admission** [2] - 30:8, 34:11
**Admissions** [1] - 38:16
**admissions** [12] - 29:3, 35:24, 35:25, 36:5, 36:10, 36:11, 37:22, 38:7, 38:8, 38:15, 38:17, 38:22
**admitted** [2] - 30:5, 30:12, 30:17
**adults** [1] - 14:11
**advisement** [1] - 43:6
**affirmatively** [1] - 30:14
**afternoon** [1] - 10:22
**agency** [1] - 41:6
**aggressive** [1] - 11:9
**agree** [2] - 3:6, 43:11
**agreeable** [1] - 43:22
**agreed** [1] - 44:14
**agreed-upon** [1] - 44:14
**agreement** [1] - 41:1
**agrees** [1] - 40:11

**alarm** [1] - 39:21
**alert** [8] - 9:5, 9:7, 9:22, 10:4, 10:12, 13:16, 22:25, 27:3
**alerted** [1] - 28:15
**alleges** [1] - 30:6
**allows** [1] - 23:16
**alone** [1] - 37:5
**alternative** [2] - 2:25, 3:5
**altruistic** [1] - 22:9
**amenable** [1] - 44:16
**Amergi** [1] - 38:11
**amount** [1] - 40:7
**amply** [1] - 30:21, 35:25
**analysis** [2] - 13:1, 27:19
**analyzes** [1] - 26:10
**Anand** [14] - 2:10, 9:9, 9:12, 16:7, 17:15, 17:20, 18:5, 18:9, 31:20, 32:5, 32:9, 33:24, 34:7, 34:15
**ANAND** [1] - 1:6
**Anands** [1] - 33:13
**anchor** [1] - 42:23
**AND** [1] - 1:6
**answer** [5] - 10:21, 17:17, 17:21, 27:14, 34:19
**anyway** [1] - 35:23
**apartment** [5] - 11:23, 12:3, 12:8, 12:18, 13:4
**APPEARANCES** [1] - 1:10
**applies** [4] - 5:9, 13:2, 21:17, 40:11
**apply** [7] - 4:5, 19:2, 22:15, 22:20, 27:7, 40:4
**April** [2] - 12:2, 26:23
**arbitration** [1] - 2:19
**arbitrator** [1] - 2:19
**argument** [5] - 27:18, 37:22, 38:8, 38:25, 41:18
**arguments** [2] - 27:19, 28:11
**arrived** [1] - 17:6
**aside** [1] - 36:3
**asleep** [4] - 10:18, 16:14, 35:18, 35:21
**Assistance** [1] - 23:5
**assistant** [1] - 43:15
**assuming** [2] - 40:10, 43:8
**assure** [1] - 35:1
**attend** [1] - 10:19

attention [1] - 7:21
attorney [2] - 37:21, 42:19
August [2] - 1:4, 45:8
aunt's [2] - 33:3, 33:17
authority [2] - 4:4, 38:6
Authority [1] - 38:11
available [1] - 38:16
Avenue [3] - 1:22, 11:23, 45:10
avenue [2] - 36:2, 36:17
avenues [1] - 38:13
awake [2] - 10:8, 11:9
awaken [3] - 11:4, 39:20, 39:22
awakened [3] - 15:11, 15:15
aware [1] - 36:18

**B**

baby [3] - 8:23, 9:2, 32:11
backdrop [1] - 11:20
background [1] - 4:10
bad [1] - 15:23
bag [2] - 6:17, 6:21
bang [2] - 39:20, 39:21
bar [1] - 4:5
based [13] - 4:3, 4:9, 4:23, 22:21, 24:2, 27:1, 27:15, 28:2, 28:10, 35:24, 42:19, 42:22, 43:1
basics [1] - 27:13
basis [2] - 13:1, 37:22, 40:13
bathrooms [1] - 34:3
Beach [1] - 1:13
became [2] - 4:13, 11:20
become [1] - 8:2
bed [13] - 8:22, 10:19, 13:13, 13:14, 13:17, 13:18, 13:22, 13:24, 14:15, 15:25, 16:12, 18:6, 35:14
bedroom [16] - 14:1, 14:10, 16:9, 31:16, 31:25, 32:10, 34:8, 35:16, 36:23, 37:1, 37:2, 37:3, 37:5, 37:17, 39:2, 39:22

bedrooms [3] - 12:4, 17:25, 34:3
beds [1] - 39:3
BEFORE [1] - 1:9
begin [1] - 2:20
beginning [1] - 12:1
behalf [2] - 22:8, 42:11
believes [1] - 23:15
belong [1] - 14:20
best [1] - 15:20
better [1] - 43:19
between [1] - 6:10
Beutler [5] - 1:15, 2:9, 8:11, 27:10, 42:18
BEUTLER [18] - 1:15, 2:9, 2:17, 3:18, 27:11, 29:13, 31:3, 31:7, 31:12, 33:4, 33:9, 33:15, 33:19, 35:2, 43:10, 43:19, 44:16, 44:20
Beutler's [2] - 6:19, 44:3
binding [1] - 37:22
bit [4] - 4:10, 8:6, 11:19, 11:25
BLANCO [1] - 1:3
Blanco [20] - 2:2, 6:15, 8:14, 11:11, 18:9, 20:8, 31:25, 32:17, 34:14, 35:7, 35:12, 36:8, 36:22, 37:12, 38:24, 39:2, 39:6, 39:12, 39:19
Blanco's [1] - 18:3
blank [1] - 14:18
blue [1] - 13:13
book [1] - 39:15
born [1] - 12:6
bottle [4] - 8:16, 14:25, 15:3, 15:18
Boulevard [1] - 1:16
bound [1] - 42:10
breakfast [1] - 19:12
bridge [2] - 41:4, 41:7
brief [4] - 30:24, 36:4, 36:10, 38:16
briefly [2] - 21:3, 34:14
briefs [2] - 27:18, 28:11
bring [1] - 7:20
brings [1] - 23:23
broken [1] - 23:23
bulletin [1] - 42:3
Bulletin [1] - 23:5
burden [4] - 4:7,

7:17, 20:24, 42:10
burden-bound [1] - 42:10
BY [1] - 1:19

**C**

C.F.R [2] - 21:4, 21:5
calendar [3] - 2:18, 43:13, 43:22
calm [5] - 8:24, 9:1, 10:10, 10:19, 16:4
calmer [1] - 11:15
cannot [6] - 21:15, 23:10, 23:20, 24:21, 26:13, 27:7
care [6] - 7:12, 14:7, 14:8, 14:10, 27:22
caress [1] - 16:4
case [28] - 2:2, 2:13, 3:2, 3:3, 3:5, 3:7, 3:16, 4:8, 4:11, 5:10, 6:14, 6:15, 7:6, 7:16, 18:21, 19:1, 21:17, 27:4, 28:3, 28:20, 35:23, 38:2, 38:4, 42:10, 42:14, 42:15, 42:23, 44:8
CASE [1] - 1:2
cases [2] - 26:24, 37:24
category [2] - 4:18, 5:8
certain [3] - 2:17, 28:10, 42:8
certainly [2] - 37:9, 43:3
certify [1] - 45:4
chair [4] - 14:1, 14:2, 14:5, 39:3
change [2] - 8:16, 14:25
changed [1] - 28:19
charge [1] - 26:20
chart [2] - 40:19, 40:20
checks [2] - 39:9, 39:16
child [1] - 15:4
children [37] - 9:21, 9:4, 14:10, 15:10, 15:15, 16:11, 16:18, 18:10, 19:24, 20:3, 20:9, 20:13, 20:18, 23:1, 29:8, 29:15, 29:18, 30:2, 31:20, 32:6, 32:9, 34:7, 34:8, 35:10, 35:14, 35:19, 36:9, 36:24, 37:1, 37:3, 37:4, 37:12,

39:5, 39:10, 42:24, 42:25
chose [1] - 24:11
Circuit [3] - 36:15, 38:10, 38:12
citation [1] - 28:16
citations [1] - 8:3
cite [8] - 5:18, 8:3, 9:17, 10:14, 16:25, 36:15, 38:1, 38:12
cited [7] - 6:10, 13:7, 13:9, 19:7, 20:22, 26:25, 36:7
cites [4] - 5:17, 21:4, 21:9, 22:1
claims [2] - 4:5, 18:24
clean [1] - 18:7
clear [4] - 7:3, 24:17, 26:1, 30:15
clearly [3] - 5:1, 6:11, 12:17
client [5] - 2:21, 6:19, 8:11, 36:22, 37:12
close [1] - 16:4
closed [2] - 9:5, 39:4
closely [1] - 5:13
clothes [2] - 6:17, 6:21
coffee [1] - 19:12
cold [1] - 8:18
collects [1] - 38:6
Collins [1] - 11:23
comfortably [1] - 8:17
coming [1] - 32:4
commonsense [1] - 18:20
Company [1] - 37:25
compensable [5] - 22:4, 22:7, 22:12, 26:13, 29:18
complained [1] - 29:24
complete [1] - 21:13
completely [1] - 25:6
concerned [2] - 4:20, 8:8
concessions [3] - 38:7, 38:8, 38:21
conclude [2] - 26:24, 41:13
concluded [3] - 24:4, 41:5, 44:23
Condo [1] - 29:10
condominium [1] - 11:23
confer [1] - 43:21
conference [4] - 3:2,

3:5, 44:4, 44:17
conflate [2] - 40:1, 41:18
conflating [1] - 41:25
conflict [1] - 43:17
confuse [1] - 27:17
Congress's [1] - 4:16
conjunction [1] - 20:22
consecutive [13] - 5:22, 6:1, 6:6, 22:19, 25:6, 25:19, 25:20, 25:23, 28:5, 32:24, 34:22, 40:14, 42:6
consider [2] - 12:25, 23:18
considered [8] - 5:3, 5:6, 6:3, 6:7, 21:7, 21:22, 25:13, 25:25
considering [1] - 6:12
considers [1] - 25:4
constantly [1] - 22:25
contact [1] - 43:15
contain [1] - 23:12
contemplated [1] - 18:25
contends [1] - 30:4
contexts [1] - 28:20
contrarily [1] - 4:23
controvert [1] - 30:7
controverted [1] - 30:7
convey [1] - 24:10
coordinate [1] - 43:16
Corp [2] - 38:2, 38:3
correct [14] - 13:23, 14:16, 15:5, 16:9, 16:19, 20:14, 31:12, 32:10, 34:1, 34:5, 34:8, 34:9, 34:15, 34:20
correctly [3] - 15:2, 32:17, 36:22
counsel [5] - 23:6, 28:18, 29:11, 38:7, 40:22
count [1] - 24:1
counted [1] - 26:21
couple [1] - 9:4
Court [59] - 1:21, 1:21, 3:4, 4:3, 4:10, 4:25, 5:16, 7:1, 8:4, 9:17, 10:14, 11:1, 11:19, 12:12, 12:25, 15:8, 18:16, 19:1, 21:3, 21:19, 22:1,

22:17, 22:24, 24:7,
26:10, 26:18, 27:5,
27:13, 27:18, 28:2,
28:9, 28:16, 29:3,
29:4, 29:6, 29:17,
29:19, 29:23, 30:9,
30:10, 30:18, 30:22,
36:6, 36:18, 36:21,
37:6, 37:11, 37:16,
38:9, 38:13, 38:22,
40:21, 44:7, 44:9,
44:10, 44:12, 45:9,
45:9
**COURT** [30] - 1:1,
2:2, 2:7, 2:12, 2:16,
3:13, 3:20, 3:24, 4:2,
8:8, 26:16, 27:10,
29:11, 31:1, 31:4,
31:10, 33:1, 33:8,
33:11, 33:18, 34:17,
35:1, 41:23, 43:5,
43:12, 43:18, 43:23,
44:13, 44:19, 44:21
**court** [5] - 5:17, 8:9,
13:9, 13:20, 26:25
**Court's** [11] - 3:8,
4:9, 5:13, 6:25, 7:19,
7:20, 27:19, 28:7,
28:8, 34:24, 41:6
**Courts** [1] - 40:2
**coverage** [4] - 4:16,
4:17, 4:22, 4:23
**covered** [3] - 4:18,
8:18, 30:5
**cramped** [1] - 13:4
**creak** [1] - 16:22
**created** [1] - 25:15
**credibility** [1] - 22:24
**cross** [1] - 34:13
**crossed** [2] - 41:4,
41:8
**crux** [1] - 5:16

### D

**Dadeland** [2] - 1:16,
1:16
**darkness** [1] - 15:6
**date** [3] - 3:17, 43:7,
43:9
**DATE** [1] - 45:8
**dates** [3] - 2:25,
44:14
**daughter** [3] - 12:6,
12:9, 15:24
**daughters** [12] -
12:5, 12:19, 12:23,
13:4, 13:6, 16:12,
29:9, 31:24, 33:23,
37:4, 37:19

**days** [10] - 2:20, 5:2,
5:22, 6:1, 22:19,
25:19, 25:24, 28:5,
34:22, 40:14
**daytime** [1] - 6:13
**DE** [1] - 36:8
**dead** [1] - 15:21
**dealing** [1] - 40:25
**decades** [1] - 25:15
**December** [2] - 44:1,
44:2
**decided** [1] - 22:2
**deciding** [1] - 37:23
**decision** [3] - 36:16,
38:4, 41:6
**declaration** [3] -
35:4, 35:5
**deed** [1] - 22:9
**deem** [2] - 30:10,
30:12
**deemed** [2] - 30:5,
30:17
**deeper** [1] - 18:19
**deeply** [1] - 39:23
**defendant** [11] - 4:6,
4:8, 11:21, 24:5, 25:4,
30:7, 37:13, 37:20,
42:16, 42:18, 43:3
**defendant's** [2] -
7:17, 28:15
**defendants** [18] -
1:7, 2:10, 4:13, 7:7,
11:22, 12:4, 12:8,
12:22, 17:2, 19:5,
20:24, 21:15, 22:2,
22:9, 28:25, 36:25,
42:10
**DEFENDANTS** [1] -
1:15
**defendants'** [5] -
19:20, 29:9, 29:15,
29:18, 30:1
**defense** [4] - 2:8,
2:16, 4:6, 4:7
**define** [1] - 25:2
**defined** [1] - 25:2,
27:25
**defines** [1] - 23:7,
42:4
**definition** [7] - 5:14,
18:17, 21:16, 23:12,
26:4, 42:2, 42:3
**degree** [1] - 42:8
**deliberate** [1] - 28:21
**denied** [1] - 3:13
**deny** [2] - 27:6, 43:8
**Department** [7] -
4:15, 5:4, 23:15,
25:17, 26:8, 27:25
**depose** [1] - 42:25

**deposition** [18] - 7:2,
7:22, 10:13, 11:1,
13:10, 13:19, 15:7,
17:4, 19:6, 19:22,
20:5, 20:21, 31:7,
33:1, 33:16, 35:6,
35:13, 42:20
**depositions** [2] - 7:8,
19:20
**describe** [1] - 20:1
**desperately** [1] -
16:1
**detail** [1] - 22:23
**details** [1] - 7:5
**determination** [2] -
22:24, 23:2
**determine** [1] - 38:18
**determined** [1] -
41:8
**determining** [1] -
36:12
**diagram** [1] - 40:20
**diaper** [1] - 8:16
**diapers** [1] - 15:1
**dictionary** [1] - 18:17
**died** [1] - 11:21
**different** [9] - 10:11,
10:17, 15:13, 15:16,
26:2, 28:20, 40:18,
42:7, 43:9
**direct** [2] - 23:12,
42:2
**directive** [2] - 4:9,
28:8
**disagreement** [1] -
27:19
**disclaim** [1] - 7:7
**discovery** [1] - 36:19
**discuss** [1] - 27:12
**discussed** [2] - 43:9,
43:10
**dishes** [1] - 18:7
**disprove** [1] - 42:12
**disputed** [1] - 30:4
**disregard** [1] - 30:9
**distinguishes** [1] -
6:10
**DISTRICT** [3] - 1:1,
1:1, 1:9
**District** [5] - 1:21,
38:4, 38:9, 38:22,
45:9
**DIVISION** [1] - 1:2
**docket** [2] - 8:1,
29:21
**doctor's** [1] - 33:5
**document** [1] - 18:19
**documenting** [1] -
28:3
**DOL** [27] - 4:5, 4:13,

4:20, 5:18, 6:10,
18:18, 21:4, 23:5,
23:7, 23:9, 23:14,
23:22, 24:19, 25:1,
25:7, 25:9, 25:11,
25:15, 25:17, 26:1,
26:14, 26:23, 28:2,
42:2, 42:3, 42:5
**domestic** [6] - 4:17,
27:20, 27:23, 40:4,
40:5, 41:22
**done** [5] - 8:12, 13:1,
29:2, 29:16, 33:19
**door** [6] - 9:4, 16:4,
39:4, 39:10, 39:17,
39:22
**doorbell** [1] - 39:19
**doors** [2] - 16:15,
16:21
**down** [7] - 8:25, 9:1,
29:12, 30:25, 31:10,
31:11, 34:17
**doze** [1] - 24:14
**dozing** [1] - 24:24
**Dr** [3] - 2:22, 35:5,
39:8
**Duo** [1] - 9:24
**during** [16] - 7:18,
11:4, 11:9, 12:3, 12:6,
13:23, 17:2, 22:3,
23:23, 28:23, 29:6,
30:2, 31:16, 33:3,
37:14, 37:21
**duties** [7] - 12:15,
18:3, 18:4, 18:6, 19:4,
21:13, 22:23
**duty** [3] - 12:16,
27:3, 42:11

### E

**eating** [1] - 21:12
**effect** [3] - 4:14,
4:16, 23:25
**effort** [1] - 41:18
**eight** [1] - 23:17
**either** [3] - 3:4, 14:4,
40:8
**eldest** [3] - 15:20,
35:15, 35:16
**elements** [2] - 27:20,
27:22
**ELMO** [1] - 8:5
**employed** [2] - 17:2,
27:23
**employee** [24] - 5:1,
5:2, 5:5, 5:6, 5:11,
5:25, 6:5, 6:13, 21:5,
21:11, 21:16, 21:20,
23:17, 25:18, 26:5,

26:6, 27:1, 27:2, 28:4,
40:5, 41:5, 41:8,
41:15, 41:22
**employee's** [1] -
26:3
**employees** [5] -
4:17, 13:18, 18:24,
27:21, 40:4
**employer** [6] - 4:7,
5:2, 5:3, 7:11, 18:24,
26:2
**employer's** [17] - 5:5,
5:12, 5:22, 5:25, 6:3,
6:5, 6:8, 21:6, 21:20,
22:18, 25:12, 25:18,
25:23, 28:4, 40:8,
40:16, 41:16
**employers** [1] -
23:16
**encouraged** [1] -
18:21
**encumbering** [1] -
44:11
**end** [6] - 6:21, 18:4,
21:23, 31:15, 43:6,
44:15
**endeavor** [1] - 29:13
**endeavoring** [1] -
31:11
**ended** [1] - 19:16
**engage** [1] - 21:11
**engaged** [2] - 19:4,
24:10
**English** [1] - 9:24
**enjoy** [5] - 12:14,
21:18, 23:8, 27:2
**enter** [3] - 10:3, 28:9,
38:13
**entered** [2] - 38:14,
38:20
**entering** [2] - 36:2,
41:7
**entertaining** [1] -
21:12
**entire** [4] - 3:3, 18:5,
34:24, 35:11
**entitled** [1] - 45:6
**entry** [3] - 8:1, 29:21,
36:17
**environment** [2] -
41:3, 41:12
**equivalent** [2] -
36:11, 38:17
**escape** [2] - 16:8,
16:13
**especially** [1] - 24:3
**ESQ** [2] - 1:11, 1:15
**established** [2] -
24:5, 24:21
**EUGENIA** [1] - 1:3

4

evening [2] - 9:6, 9:13
evenings [1] - 36:23
events [1] - 26:11
eventually [1] - 12:11
evidence [4] - 30:19, 36:1, 38:23, 42:14
ex [1] - 38:11
example [9] - 5:18, 5:19, 5:25, 6:9, 6:11, 25:18, 25:22, 26:22
examples [1] - 6:12
except [2] - 27:13, 42:24
exclude [6] - 4:21, 26:13, 40:7, 40:14, 40:17, 41:21
excluded [4] - 40:5, 41:1, 41:13, 41:14
excluding [1] - 41:20
exclusion [4] - 27:16, 39:24, 40:3, 40:12
exempt [3] - 18:24, 25:13, 27:1
exemption [15] - 7:17, 13:2, 19:2, 20:25, 21:25, 22:15, 24:11, 27:13, 27:17, 27:21, 28:6, 40:12, 42:1, 42:11, 42:15
exemptions [1] - 4:21
exhausted [1] - 11:9
expand [2] - 4:16, 4:21
expanded [1] - 24:19
expanding [1] - 4:23
explain [1] - 4:11
explained [1] - 35:25
exploit [1] - 28:17
explore [2] - 2:24, 3:12
extended [7] - 5:23, 6:4, 6:8, 21:6, 21:21, 28:6, 40:13
extent [1] - 43:10

**F**

F.2d [1] - 36:15
F.3d [1] - 38:12
Fact [3] - 25:7, 25:17, 26:18
fact [13] - 12:25, 19:3, 25:11, 26:1, 26:15, 26:22, 28:11, 30:18, 30:20, 36:13, 38:9, 38:19, 38:22

Facts [1] - 29:21
facts [18] - 7:24, 16:25, 20:22, 28:12, 28:25, 29:5, 30:3, 30:5, 30:6, 30:10, 30:11, 30:13, 30:16, 30:17, 36:4, 36:12, 38:16
factual [4] - 18:22, 22:20, 36:21, 42:9
fails [1] - 41:20
fall [1] - 35:17
falling [1] - 10:18
falls [1] - 28:6
family [5] - 17:24, 20:3, 21:18, 31:14, 34:2
fan [2] - 14:19
far [2] - 4:19, 42:4
feet [1] - 37:18
fell [1] - 35:21
few [1] - 27:16
Field [1] - 23:5
file [2] - 36:12, 38:17
filed [3] - 30:21, 36:20, 42:13
final [6] - 4:5, 5:20, 6:10, 25:9, 25:11, 28:2
finally [1] - 38:20
FINCH [1] - 1:6
Finch [4] - 2:22, 19:21, 32:18, 39:8
Finch's [2] - 20:5, 35:5
Fire [1] - 37:25
fireman [1] - 40:7
first [6] - 2:21, 3:20, 12:17, 13:3, 27:22, 44:14
five [20] - 5:22, 6:1, 6:6, 22:19, 23:20, 23:23, 24:5, 25:4, 25:5, 25:19, 25:23, 28:4, 31:5, 32:23, 33:14, 40:14, 42:6, 42:7, 43:2
Five [1] - 34:22
FL [2] - 1:13, 1:17
flexibility [1] - 23:16
floor [1] - 16:22
Floor [2] - 1:22, 45:10
FLORIDA [1] - 1:1
Florida [3] - 1:3, 1:23, 45:11
FLSA [1] - 13:1
focus [1] - 19:21
focused [2] - 4:25, 6:25

follow [1] - 40:15
following [4] - 2:1, 8:2, 10:7, 17:9
FOR [3] - 1:8, 1:11, 1:15
foregoing [1] - 45:4
form [1] - 37:22
formally [1] - 4:12
forward [1] - 3:16
four [15] - 6:2, 11:13, 11:14, 12:9, 12:19, 13:4, 15:11, 15:14, 15:16, 25:20, 25:24, 35:7, 37:1, 37:3, 38:24
fourth [1] - 12:6, 32:12
FPR [2] - 1:20, 45:8
free [3] - 12:15, 18:25, 19:3
freedom [2] - 21:13, 22:12
frequent [1] - 11:12
Friday [2] - 6:2, 25:20
Fridays [1] - 34:18
frightened [2] - 11:17
frightening [1] - 11:18
Froude [5] - 11:24, 12:11, 29:9, 34:2, 34:6
function [5] - 9:5, 14:8, 14:9, 16:7
functionally [2] - 36:11, 38:17
furthermore [1] - 42:21

**G**

General [1] - 38:3
general [1] - 38:18
generally [2] - 35:13, 35:20
Generally [1] - 8:14
genuine [1] - 36:13
genuinely [1] - 30:4
girl [7] - 8:16, 8:19, 11:12, 11:16, 15:1, 15:3, 15:19
girl's [1] - 35:15
girls [11] - 8:17, 10:4, 10:10, 11:4, 11:7, 12:10, 14:6, 18:6, 31:15, 35:16, 35:20
Gomez [2] - 33:21, 34:13
Gomez's [1] - 35:4

Goodman [1] - 36:19
Goodman's [1] - 44:11
gotcha [1] - 28:19
Grace [9] - 6:19, 17:1, 17:6, 17:7, 17:10, 17:18, 19:6, 19:11, 19:19
granted [2] - 42:21
granting [2] - 43:6, 44:15
gratuitous [1] - 22:8
great [1] - 20:11
greatly [1] - 40:19
guess [1] - 20:15
guidance [1] - 28:3
gymnastics [1] - 33:5

**H**

Halifax [1] - 37:24, 38:4
hang [2] - 17:11, 19:10
Harbour [3] - 29:10, 32:4, 32:8
hard [1] - 31:12
harsh [1] - 11:6
hear [7] - 3:20, 3:25, 9:3, 16:15, 16:17, 16:19, 16:21
hearing [2] - 23:7, 36:19
Heckler [1] - 36:14
Heckler-Koch [1] - 36:14
held [3] - 38:7, 38:8, 38:21
helped [1] - 40:19
hereby [1] - 45:4
herself [2] - 6:14, 12:14
himself [2] - 28:25, 39:18
hired [1] - 30:1
home [13] - 11:24, 17:19, 20:8, 20:14, 21:24, 29:9, 31:14, 33:2, 33:13, 37:14, 39:11, 41:3, 41:12
home-like [2] - 41:3, 41:12
Honor [10] - 2:9, 3:1, 3:19, 4:1, 27:11, 30:15, 43:14, 43:19, 44:16, 44:20
HONORABLE [1] - 1:9
hours [29] - 5:6, 5:9,

5:10, 5:21, 6:13, 6:16, 7:19, 10:8, 10:9, 10:22, 22:3, 22:10, 22:11, 22:19, 23:17, 23:20, 23:23, 24:5, 25:4, 25:5, 25:13, 26:13, 26:21, 33:14, 37:15, 42:6, 42:7, 43:2
House [3] - 29:10, 32:4, 32:8
house [21] - 7:12, 9:3, 9:10, 14:4, 16:20, 17:11, 17:15, 18:7, 19:10, 19:14, 19:17, 20:17, 28:23, 33:3, 33:11, 33:17, 34:2, 34:3, 34:6, 37:1
household [5] - 10:1, 14:20, 14:21, 27:24
housekeeper [1] - 20:13
housekeeping [1] - 8:12

**I**

idea [1] - 43:19
identified [2] - 29:3, 29:6
identify [1] - 29:4
imagine [1] - 16:3
import [3] - 7:12, 19:6, 19:22, 20:25, 24:15
important [7] - 4:19, 5:20, 6:9, 12:12, 12:17, 12:24, 23:9
importantly [1] - 28:17
impossible [1] - 14:1
Inc [1] - 37:25
including [1] - 12:19
independent [2] - 12:15, 19:4
independently [1] - 8:4
inherent [1] - 4:4
inquiry [2] - 21:23, 41:7
inside [1] - 14:10
instead [1] - 14:5
instructive [1] - 25:8
Insurance [1] - 37:25
intended [1] - 28:22
intent [1] - 4:16
intention [1] - 24:9
interpretation [1] - 23:16
interpreted [1] - 42:7

interpreting [1] -
22:17
interpretive [1] -
28:3
interrupt [2] - 16:6,
43:14
interruptions [2] -
41:3, 41:12
invent [1] - 25:11
issue [8] - 7:6, 22:20,
27:17, 27:23, 30:18,
36:13, 38:18, 42:9
issues [2] - 3:15,
3:18

**J**

J.H [1] - 1:12
Jaime [1] - 2:5
JAIME [1] - 1:11
January [5] - 4:14,
11:21, 11:25, 18:5,
31:15
Jay [1] - 4:1
JMM@MJBPA.com
[1] - 1:18
job [10] - 12:15, 18:3,
18:4, 19:4, 20:2,
22:23, 26:3, 33:24,
36:8, 37:6
Juan [1] - 36:14
JUDGE [1] - 1:9
Judge [3] - 36:19,
41:25, 44:11
judge [1] - 44:18
Judgment [2] - 7:25,
19:8
judgment [32] - 3:14,
4:8, 4:12, 5:17, 7:1,
7:20, 10:15, 11:2,
13:20, 15:8, 20:23,
22:2, 24:3, 24:22,
27:6, 28:10, 30:12,
35:24, 36:3, 36:11,
36:18, 37:23, 38:14,
38:20, 42:13, 42:16,
42:20, 43:4, 43:7,
43:8
JUDGMENT [1] - 1:8
judicial [2] - 37:22,
43:15
jump [3] - 36:15,
38:1, 38:12
jury [3] - 22:25, 23:2,
43:20

**K**

kids [4] - 7:12, 18:23,
24:19, 39:16

kitchen [3] - 14:4,
14:9, 39:14
knowledge [1] - 7:7
knows [3] - 30:16,
42:19, 42:24
Koch [1] - 36:14

**L**

labor [1] - 42:19
Labor [2] - 4:15,
27:25
lack [1] - 29:25
laid [1] - 27:17
lamp [1] - 14:24
language [1] - 23:11
lapses [1] - 10:9
last [2] - 2:19, 12:7
lasted [1] - 11:24
laundry [1] - 18:7
law [7] - 24:21, 27:8,
27:12, 28:3, 40:22,
42:19
Law [1] - 1:15
least [11] - 6:11,
6:14, 12:20, 12:21,
23:20, 25:2, 25:5,
42:6, 42:9, 44:5, 44:6
leave [6] - 17:7,
17:13, 21:14, 22:13,
33:2, 33:11
left [6] - 6:21, 17:5,
17:15, 19:12, 32:13,
33:4
legal [1] - 38:25
lengthy [1] - 8:5
less [10] - 5:9, 5:21,
8:14, 16:11, 22:6,
22:10, 22:18, 25:12,
26:12, 43:2
letter [2] - 21:4,
25:15
light [1] - 3:8, 14:25,
15:3
lights [1] - 39:3
Lindsey [1] - 9:9,
16:7, 17:19, 18:5,
18:9, 19:21, 20:5,
31:20, 32:5, 33:24,
34:7
LINDSEY [1] - 1:6
Lindsey's [2] -
17:15, 32:9
line [15] - 7:22, 7:23,
9:17, 10:5, 13:21,
15:9, 17:3, 17:4, 18:2,
18:11, 19:25, 20:5,
20:6
Line [6] - 9:16, 9:17,
13:7, 17:18, 17:19,

18:12
lines [6] - 10:13,
11:3, 13:10, 19:8,
19:9
Lingo [1] - 9:24
listen [1] - 39:17
listens [1] - 39:10
lists [1] - 30:3
Litigants [1] - 38:8
litigants [1] - 38:21
litigation [1] - 6:19
live [14] - 5:7, 6:16,
6:20, 17:5, 17:19,
17:22, 17:23, 18:9,
18:14, 18:24, 21:16,
22:13, 27:20, 41:22
live-in [1] - 5:7,
6:16, 6:20, 18:9,
18:14, 18:24, 21:16,
22:13, 27:20, 41:22
lived [3] - 7:12, 12:9,
34:15
lives [1] - 5:1
living [6] - 12:7,
12:18, 13:3, 18:14,
27:12, 39:14
Local [1] - 38:15
local [2] - 30:5, 36:1
locks [1] - 39:18
lodging [2] - 41:2,
41:11
logic [2] - 40:20,
40:22
longstanding [1] -
25:14
longwinded [1] - 8:2
look [5] - 15:17,
18:17, 23:5, 24:15,
25:1
looked [1] - 23:10
looking [2] - 12:13,
21:2, 23:11
looks [1] - 14:12
lose [1] - 41:15
lower [1] - 8:18

**M**

magistrate [1] -
44:18
Magistrate [1] -
36:19
main [1] - 26:3
male [1] - 37:13
mandates [1] - 30:8
March [1] - 12:1
MARIA [1] - 1:3
Maria [19] - 17:11,
17:15, 17:19, 18:3,
18:9, 19:9, 20:2, 20:8,

21:1, 31:9, 31:14,
31:15, 31:19, 31:25,
32:4, 32:8, 33:22,
33:23, 34:6
Mark [1] - 1:15
MARK [1] - 1:15
mark [1] - 2:9
mask [1] - 4:2
massages [1] - 8:25
master [1] - 37:2
material [12] - 20:22,
28:11, 29:5, 30:3,
30:11, 30:16, 30:18,
36:4, 36:13, 38:16,
38:19
Material [1] - 29:21
matter [6] - 2:24,
24:21, 27:7, 43:6,
44:12, 45:6
mean [11] - 6:24,
15:13, 15:14, 18:14,
21:16, 21:23, 22:4,
22:17, 24:24, 26:5,
41:22
meaning [1] - 15:24
meaningful [7] - 7:7,
23:21, 23:24, 25:3,
26:3, 42:5, 42:8
means [4] - 5:14,
23:3, 30:25, 42:5
mediate [1] - 3:7
mediation [5] - 3:11,
44:4, 44:8, 44:11,
44:17
meditation [1] -
35:17
meet [2] - 21:16,
41:20
memorandum [1] -
36:7
mention [1] - 3:1
mentioned [2] - 2:23,
3:10
MIAMI [1] - 1:2
Miami [7] - 1:3, 1:13,
1:17, 1:22, 1:23,
45:10, 45:11
microphone [1] -
3:25
microscope [1] -
23:10
mid [1] - 10:22
mid-afternoon [1] -
10:22
Middle [1] - 38:4
middle [2] - 39:8,
39:13
might [1] - 8:6
mildly [1] - 12:21
mine [1] - 14:14

minimum [5] - 21:2,
22:16, 22:20, 27:5
minor [3] - 36:24,
37:1, 37:3
minors [1] - 37:4
minute [1] - 26:17
minutes [2] - 31:5,
41:24
misstatement [1] -
28:18
mode [1] - 9:22
mom [2] - 32:12
moment [1] - 38:25
Monday [6] - 6:1,
6:6, 10:22, 25:19,
25:24, 43:24
monsters [2] - 8:22,
15:25
month [1] - 44:6
months [4] - 12:7,
12:11, 12:20, 43:20
morning [14] - 2:2,
2:6, 2:7, 2:9, 2:12,
3:15, 8:15, 10:10,
10:22, 17:14, 18:8,
19:12, 33:12, 39:11
mother [1] - 15:18
MOTION [1] - 1:8
Motion [2] - 7:24,
19:7
motion [8] - 3:2,
3:14, 4:12, 20:23,
36:10, 38:17, 42:13,
44:15
Motors [1] - 38:3
movant [1] - 30:4
move [3] - 3:23,
42:16
moved [5] - 4:8,
11:24, 12:11, 31:14,
34:2
movies [3] - 11:8,
11:18, 15:21
moving [2] - 30:13
MR [27] - 2:5, 2:9,
2:15, 2:17, 3:18, 3:22,
4:1, 4:3, 8:10, 26:18,
27:11, 29:13, 31:3,
31:7, 31:12, 33:4,
33:9, 33:15, 33:19,
35:2, 41:25, 43:10,
43:14, 43:19, 44:7,
44:16, 44:20
music [2] - 8:19,
35:17
must [1] - 26:20

**N**

names [1] - 31:18

**nannies** [2] - 18:13, 35:8
**nanny** [14] - 6:18, 11:20, 11:21, 17:1, 18:14, 18:23, 20:12, 26:19, 29:15, 32:14, 32:16, 33:19, 33:20, 36:8
**necessarily** [1] - 22:4
**necessary** [1] - 44:10
**need** [2] - 34:17, 40:4
**needed** [1] - 20:11
**nerves** [1] - 11:8
**nervous** [3] - 8:21, 8:24, 11:9
**never** [15] - 4:8, 9:14, 9:25, 10:2, 10:11, 10:24, 16:11, 19:12, 24:14, 27:22, 29:24, 39:11, 39:19, 42:13
**newborn** [2] - 12:9, 12:20
**next** [6] - 2:2, 2:13, 9:16, 11:1, 17:8, 43:20
**night** [27] - 8:21, 11:5, 11:10, 11:12, 13:23, 14:7, 14:10, 15:11, 15:14, 16:25, 17:9, 19:21, 22:21, 23:18, 23:24, 24:6, 25:5, 30:2, 30:21, 31:16, 31:20, 35:11, 36:8, 39:2, 39:8, 39:13, 40:14
**night's** [6] - 23:8, 23:21, 23:25, 25:3, 27:2, 42:6
**nights** [10] - 5:22, 6:2, 6:6, 8:22, 22:19, 25:20, 25:23, 28:5, 28:23, 32:22
**nightshift** [4] - 11:20, 29:7, 35:9, 37:11
**nightstand** [2] - 14:22, 14:24
**nighttime** [1] - 7:19
**nighttimes** [1] - 34:18
**nine** [2] - 33:12, 43:13
**ninth** [1] - 6:7
**NO** [1] - 1:2
**nobody** [1] - 42:23
**nocturnal** [1] - 9:6
**noise** [4] - 16:16,

35:22, 39:4, 39:5
**noises** [1] - 16:16
**none** [1] - 21:16
**nonmoving** [1] - 30:11
**normal** [2] - 21:11, 22:13
**normally** [1] - 4:6
**North** [2] - 1:22, 45:10
**note** [1] - 38:5
**nothing** [6] - 9:7, 9:8, 20:19, 28:14, 39:7
**November** [2] - 44:1
**number** [2] - 12:9, 23:6

---

**O**

**o'clock** [1] - 43:13
**observed** [1] - 29:17
**obstacles** [1] - 2:17
**obvious** [1] - 42:25
**obviously** [2] - 13:5, 43:6
**occasions** [1] - 15:16
**October** [5] - 43:12, 43:13, 43:24, 43:25, 44:1
**OF** [1] - 1:1
**office** [1] - 43:15
**Offices** [1] - 1:15
**Official** [1] - 45:9
**official** [1] - 1:21
**often** [3] - 11:4, 11:11
**oil** [1] - 40:6
**once** [2] - 19:20, 26:12
**one** [22] - 2:10, 3:4, 6:12, 7:6, 8:15, 10:17, 10:18, 12:4, 12:10, 14:4, 15:14, 15:20, 15:24, 19:8, 26:17, 29:20, 29:25, 32:12, 33:19, 33:20, 34:11
**one's** [1] - 10:19
**ones** [3] - 11:13, 11:16, 16:16
**ongoing** [1] - 44:8
**opinion** [2] - 26:23, 38:10
**opportunity** [2] - 3:6, 3:9
**opposing** [5] - 23:6, 28:36, 38:10, 38:16, 40:21
**Option** [1] - 40:10

**oral** [3] - 28:11, 37:21, 38:7
**order** [21] - 3:4, 3:13, 4:21, 5:13, 5:17, 6:25, 7:1, 7:19, 9:11, 9:17, 10:15, 11:2, 13:8, 13:9, 13:20, 14:25, 15:8, 18:8, 22:2, 28:7, 36:7
**OT** [2] - 28:6, 40:12
**otherwise** [2] - 26:4, 41:9
**outcome** [2] - 41:10, 41:14
**outside** [1] - 17:24
**overlooked** [2] - 29:19, 29:20
**overnight** [2] - 13:25
**overruled** [1] - 40:3
**overtime** [3] - 4:5, 27:21, 40:12
**overwhelming** [2] - 38:23, 42:14
**own** [8] - 4:3, 4:24, 6:17, 20:23, 21:14, 21:19, 27:2, 35:24

---

**P**

**P.A** [2] - 1:12, 1:15
**P.M** [6] - 6:2, 6:6, 17:5, 17:8, 25:20, 25:23
**pacified** [1] - 35:22
**Page** [42] - 7:22, 7:23, 9:16, 9:17, 10:5, 10:13, 11:3, 13:7, 13:10, 13:20, 13:21, 15:9, 17:3, 17:4, 17:18, 17:19, 18:2, 18:11, 19:8, 19:9, 19:25, 20:5, 20:6, 28:7, 29:21, 31:8, 31:22, 32:15, 33:21, 34:11, 34:12, 34:13, 35:12, 36:6, 36:7, 36:20, 37:10, 38:5
**page** [2] - 32:2, 32:15
**Pages** [1] - 1:7
**pages** [1] - 35:6
**paid** [1] - 22:7
**Palestinian** [1] - 38:11
**papers** [1] - 3:23
**Paragraph** [1] - 29:17
**paragraph** [3] - 8:1, 29:6, 29:22
**parent** [1] - 9:6

**parent's** [1] - 16:9
**parents** [3] - 16:5, 16:12, 37:2
**parents'** [1] - 16:13
**part** [4] - 5:17, 37:8, 37:9, 42:2
**particular** [3] - 5:15, 19:3, 22:23
**parties** [1] - 28:9
**party** [6] - 30:11, 30:13, 36:10, 38:6, 41:5
**party's** [1] - 30:16
**passed** [1] - 33:25
**past** [1] - 26:16
**pattern** [1] - 18:22, 36:22
**Paving** [1] - 37:25
**pay** [2] - 22:2, 22:9
**paying** [1] - 16:6
**pending** [2] - 3:2, 3:3
**people** [1] - 15:21
**per** [2] - 5:21, 15:11
**perhaps** [2] - 27:6, 27:13
**period** [11] - 6:4, 6:8, 6:13, 12:3, 13:3, 17:3, 21:21, 28:6, 37:5, 40:13, 43:25
**periods** [6] - 5:24, 12:17, 21:6, 21:13, 21:18, 43:21
**permanent** [1] - 40:13
**permanently** [2] - 21:6, 21:21
**permitted** [1] - 23:19
**person** [2] - 13:25, 41:15
**perspective** [1] - 12:13
**pertinent** [1] - 23:12
**phone** [1] - 39:19
**physically** [2] - 20:8, 20:18
**Pinsweet** [1] - 38:2
**place** [1] - 9:7
**placed** [3] - 13:18, 14:14, 14:15
**plaintiff** [62] - 2:4, 2:5, 2:14, 4:4, 5:10, 6:20, 7:4, 7:8, 7:18, 8:1, 9:19, 10:14, 10:15, 11:20, 12:1, 12:5, 12:7, 12:10, 12:13, 12:18, 13:5, 13:6, 13:12, 17:4, 17:6, 19:3, 19:21, 19:23, 21:17, 21:23, 22:3, 22:5, 22:15,

22:17, 24:4, 24:5, 24:8, 24:10, 24:13, 26:12, 27:3, 27:23, 28:23, 29:1, 29:7, 29:8, 29:10, 29:14, 29:24, 30:6, 30:20, 33:1, 36:22, 37:2, 37:18, 38:15, 38:21, 40:1, 42:11, 42:20, 42:22, 43:1
**Plaintiff** [1] - 1:4
**PLAINTIFF** [1] - 1:11
**plaintiff's** [21] - 7:2, 7:14, 7:22, 7:24, 10:13, 11:1, 13:10, 13:19, 15:7, 16:24, 22:21, 24:2, 24:15, 24:18, 27:7, 28:10, 29:17, 29:20, 35:24, 36:4, 41:18
**Plaintiff's** [1] - 7:24
**planning** [1] - 27:12
**pleading** [1] - 36:3
**pleadings** [3] - 4:11, 24:8, 24:16
**point** [5] - 8:7, 26:18, 29:1, 35:23, 40:24
**points** [1] - 27:16
**posed** [1] - 3:14
**possible** [2] - 2:24, 3:7
**preamble** [1] - 18:18
**precedes** [1] - 42:4
**precisely** [1] - 9:5
**prefer** [1] - 44:17
**prefers** [1] - 44:7
**premise** [2] - 22:13, 41:16
**premises** [26] - 5:5, 5:12, 5:22, 5:23, 6:1, 6:3, 6:4, 6:6, 6:8, 21:6, 21:7, 21:14, 21:21, 22:18, 24:20, 25:12, 25:19, 25:20, 25:23, 25:25, 28:4, 29:2, 35:7, 40:8, 40:16, 40:19
**premises)** [1] - 25:21
**prepared** [2] - 3:18, 27:14
**presence** [2] - 36:13, 38:18
**present** [2] - 20:8, 20:18
**presentations** [1] - 44:21
**pressed** [1] - 35:9
**pretrial** [1] - 27:21
**pretty** [1] - 9:18
**previously** [1] -

15:10
**private** [7] - 12:14, 21:11, 21:18, 41:2, 41:11, 44:11, 44:16
**problem** [2] - 11:7, 41:17
**problems** [1] - 8:21
**procedural** [1] - 11:20
**procedurally** [1] - 42:15
**proceeding** [2] - 9:13, 40:10
**proceedings** [2] - 2:1, 45:5
**Proceedings** [1] - 44:23
**prodding** [1] - 28:25
**proffered** [1] - 30:14
**profoundly** [1] - 10:24
**prompting** [1] - 30:14
**promulgated** [2] - 25:10, 26:23
**property** [1] - 21:24
**proposition** [1] - 38:6
**prove** [2] - 4:7, 42:10
**proven** [1] - 43:3
**provide** [2] - 40:21
**provided** [2] - 30:17, 31:18
**proving** [1] - 20:24
**provision** [1] - 5:15
**purpose** [3] - 4:20, 4:24, 18:18
**purposes** [6] - 21:14, 21:25, 24:3, 24:22, 30:11, 43:4
**pursuits** [1] - 21:11
**push** [1] - 2:23
**put** [6] - 8:5, 12:21, 14:22, 18:6, 33:15, 35:14
**putting** [1] - 36:3

# Q

**qualify** [1] - 5:23
**quarters** [3] - 23:1, 41:2, 41:12
**questioning** [1] - 32:16
**questions** [3] - 3:14, 27:14, 41:11
**quite** [1] - 10:11
**quoted** [1] - 7:19
**quotes** [1] - 7:1
**quoting** [1] - 23:14

# R

**rather** [3] - 4:17, 24:16, 44:11
**read** [2] - 6:12, 36:6
**reading** [1] - 39:15
**ready** [2] - 2:14, 2:16
**real** [1] - 19:1
**reality** [1] - 23:19
**really** [5] - 5:14, 5:15, 7:13, 24:13, 39:1
**reason** [3] - 12:12, 16:5, 30:9
**reasons** [2] - 28:13, 42:25
**rebut** [1] - 41:24
**recently** [1] - 44:8
**recess** [1] - 44:22
**reconsider** [1] - 27:6
**record** [5] - 7:3, 8:3, 30:19, 30:21, 36:1
**redact** [1] - 8:20
**refer** [2] - 8:19, 15:8
**reference** [1] - 11:2
**referenced** [2] - 24:8
**reflects** [1] - 23:18
**regarding** [2] - 10:4, 16:24
**regardless** [1] - 41:14
**regulation** [15] - 4:20, 4:25, 5:1, 5:11, 5:18, 19:1, 21:10, 23:12, 23:15, 23:22, 24:20, 25:8, 26:4, 26:25, 41:6
**regulations** [9] - 21:2, 22:5, 22:6, 23:3, 23:10, 23:11, 25:1, 26:14, 28:1
**regulatory** [1] - 18:19
**rel** [1] - 38:11
**relation** [1] - 5:19
**relax** [1] - 34:17
**relied** [1] - 28:22
**rely** [1] - 7:14
**remain** [1] - 3:22
**remember** [4] - 19:23, 20:9, 20:16, 20:20
**repeat** [1] - 10:16
**replaced** [1] - 6:22
**reply** [3] - 29:20, 29:22, 36:7
**REPORTED** [1] - 1:19
**reporter** [1] - 8:9
**REPORTER** [1] -

29:11
**Reporter** [2] - 1:21, 45:9
**request** [1] - 28:15
**require** [2] - 23:17, 39:9
**required** [2] - 4:4, 22:6
**requirement** [3] - 20:7, 20:10, 20:12
**requirements** [2] - 20:16, 41:20
**requires** [1] - 5:11
**research** [1] - 27:1
**reside** [8] - 5:3, 6:3, 6:7, 21:24, 25:12, 25:25, 27:24, 40:8
**residence** [3] - 30:20, 32:18, 34:14
**residency** [1] - 39:9
**resides** [9] - 5:5, 5:6, 5:25, 6:5, 21:5, 21:20, 25:18, 25:22, 28:5
**residing** [8] - 5:23, 25:21, 40:11, 40:16, 40:18, 41:5, 41:9, 41:15
**resolution** [1] - 44:9
**resolved** [1] - 35:23
**respond** [3] - 4:4, 4:12, 5:16
**response** [1] - 25:9
**responsibilities** [2] - 8:13, 39:9
**rest** [5] - 10:18, 12:21, 13:15, 14:3, 20:21
**rested** [1] - 33:7
**resting** [1] - 10:19
**restrict** [1] - 4:17
**restricted** [4] - 13:5, 24:19, 24:23, 42:22
**restrictive** [1] - 12:21
**review** [1] - 8:4
**reviewing** [2] - 18:18, 26:24
**riddled** [1] - 7:8
**Rifle** [1] - 36:14
**rig** [1] - 40:6
**rightfully** [1] - 24:4
**rings** [1] - 39:11
**rises** [1] - 39:11
**ROBERT** [1] - 1:9
**room** [25] - 9:20, 11:14, 12:4, 12:6, 12:10, 12:19, 12:23, 15:4, 15:23, 16:14, 17:22, 17:23, 18:23, 23:2, 29:7, 29:10, 29:14, 37:7, 39:3,

39:5, 39:8, 39:15, 42:24, 43:2
**rooms** [1] - 14:4
**rosary** [3] - 14:13, 14:14, 14:15
**rough** [1] - 40:20
**row** [1] - 23:20
**RPR** [2] - 1:20, 45:8
**Rule** [5] - 28:15, 30:5, 30:8, 36:1, 38:15
**rule** [14] - 4:5, 4:13, 4:22, 6:10, 22:20, 25:9, 25:11, 25:14, 27:7, 28:2, 30:9, 42:2, 42:5
**ruled** [1] - 28:2
**rules** [9] - 27:16, 30:15, 39:25, 40:2, 40:3, 40:11, 40:15, 41:19, 42:5
**ruling** [2] - 3:8, 5:20

# S

**SAMUEL** [1] - 1:6
**Samuel** [13] - 2:3, 2:10, 2:21, 10:1, 11:4, 14:20, 14:21, 15:15, 32:18, 34:15, 35:14, 37:13, 39:16
**Samuel's** [2] - 35:4, 35:6
**Samuel-Finch** [1] - 32:18
**Saturday** [2] - 6:7, 25:24
**saw** [2] - 6:22, 15:21
**scared** [1] - 15:22
**scheduled** [4] - 2:18, 2:19, 2:22, 28:24
**scheduling** [1] - 44:4
**schooled** [1] - 42:19
**SCOLA** [1] - 1:9
**scream** [1] - 8:23, 8:24, 15:25
**screaming** [1] - 9:2
**seated** [1] - 3:22
**second** [4] - 2:20, 3:11, 5:4, 31:25, 37:3, 40:1
**Section** [1] - 21:9
**see** [8] - 10:20, 11:8, 14:12, 15:5, 23:7, 24:3, 30:9, 37:16
**seeing** [1] - 15:25
**segment** [4] - 9:16, 9:18, 13:19, 15:7
**semantics** [1] - 24:16

**send** [1] - 44:13
**sense** [3] - 26:6, 30:12, 41:9
**sent** [1] - 32:13
**separate** [3] - 6:13, 26:11
**September** [2] - 25:9, 43:11
**serene** [1] - 11:16
**service** [2] - 4:17, 35:9
**set** [3] - 2:13, 3:15, 40:2
**sets** [1] - 41:19
**settle** [1] - 3:7
**settlement** [5] - 3:2, 3:4, 3:12, 44:4, 44:17
**seven** [3] - 5:2, 29:6, 35:12
**several** [5] - 15:13, 23:24, 28:13, 37:24, 43:20
**severely** [1] - 24:18
**shadow** [1] - 15:22
**Shana** [1] - 29:15
**Shane** [1] - 33:24
**Shane's** [1] - 33:24
**shared** [1] - 23:6
**SHARON** [2] - 1:20, 45:8
**Sheet** [3] - 25:7, 25:17, 26:18
**sheet** [2] - 26:15, 26:22
**sheets** [1] - 26:1
**shift** [12] - 6:15, 6:17, 6:22, 13:25, 17:8, 17:11, 19:10, 19:16, 22:3, 30:2, 31:16, 40:25
**shifts** [4] - 22:6, 22:10, 26:12, 40:9
**showed** [1] - 20:11
**shows** [3] - 21:23, 24:18, 40:22
**sic** [1] - 34:15
**similar** [2] - 34:11, 36:5
**similarly** [1] - 6:5
**simply** [2] - 10:17, 28:15
**single** [1] - 31:20
**sister** [1] - 15:19
**sitting** [1] - 39:14
**situation** [1] - 40:25
**sleep** [85] - 5:12, 5:15, 6:11, 6:24, 7:4, 8:17, 9:6, 9:9, 9:11, 9:15, 9:20, 9:22, 10:3, 10:7, 10:11, 10:12,

8

10:16, 10:18, 10:20, 10:23, 10:24, 13:14, 13:15, 13:17, 13:22, 13:24, 14:11, 16:6, 16:12, 23:2, 23:4, 23:7, 23:8, 23:13, 23:20, 23:21, 23:25, 24:6, 24:9, 24:17, 24:24, 25:2, 25:3, 25:4, 26:4, 26:5, 26:6, 26:8, 26:11, 27:2, 27:16, 29:17, 29:25, 30:1, 31:16, 31:19, 32:20, 32:22, 33:13, 33:22, 33:23, 34:20, 36:9, 36:23, 37:6, 39:24, 40:3, 40:5, 40:7, 40:12, 40:13, 40:15, 40:17, 41:1, 41:3, 41:12, 41:21, 42:3, 42:4, 42:5, 42:6, 43:2

**sleep-like** [1] - 10:3
**sleeping** [17] - 5:21, 6:2, 6:14, 9:21, 15:4, 21:12, 25:20, 25:24, 26:1, 26:9, 26:20, 29:2, 32:5, 32:9, 37:17, 39:5, 39:7
**sleeps** [8] - 9:4, 10:19, 22:18, 23:3, 24:20, 24:21, 28:4, 39:22
**slept** [31] - 9:13, 9:25, 10:25, 15:20, 23:1, 24:9, 24:14, 28:23, 29:8, 29:10, 29:14, 30:20, 31:24, 32:11, 32:12, 33:8, 33:9, 33:13, 33:17, 34:6, 34:8, 35:7, 35:10, 35:11, 37:2, 37:5, 37:19, 38:24
**slow** [4] - 29:12, 30:25, 31:11, 34:17
**slowing** [1] - 31:10
**slowly** [1] - 8:9
**small** [6] - 9:18, 14:1, 16:20, 23:1, 37:4
**smoke** [1] - 39:21
**snooze** [1] - 24:25
**snoring** [3] - 39:6, 39:10, 39:17
**someone** [1] - 20:11
**sometimes** [5] - 10:10, 11:15, 16:8, 33:4, 33:5
**Sometimes** [1] - 33:6
**somewhat** [1] - 23:23

**somewhere** [1] - 12:1
**sorry** [4] - 29:11, 31:3, 32:15, 43:14
**sort** [1] - 40:22
**South** [2] - 1:16, 1:16
**SOUTHERN** [1] - 1:1
**speaking** [4] - 3:24, 8:9, 35:13, 35:20
**speaks** [1] - 26:19
**specific** [2] - 3:17, 26:22
**specifically** [2] - 29:25, 36:9
**speed** [3] - 30:25, 31:1, 31:4
**spent** [3] - 5:21, 21:7, 21:22
**spot** [1] - 43:22
**St** [1] - 1:12
**stage** [1] - 10:12
**start** [1] - 28:14
**started** [1] - 17:8
**state** [2] - 10:3, 10:17
**statement** [8] - 4:24, 29:5, 30:3, 30:10, 30:16, 36:4, 37:21, 38:16
**Statement** [1] - 29:20
**statements** [2] - 28:11, 28:21
**STATES** [2] - 1:1, 1:9
**States** [3] - 1:21, 36:14, 45:9
**states** [6] - 6:11, 8:14, 10:15, 17:3, 19:21, 26:19
**status** [1] - 41:15
**statute** [3] - 12:25, 22:14, 27:25
**stayed** [3] - 13:6, 24:12, 29:7
**staying** [1] - 12:22
**Ste** [1] - 1:12
**STENOGRAPHICA LLY** [1] - 1:19
**still** [3] - 3:16, 5:11, 36:17
**stint** [1] - 12:22
**stipulation** [1] - 27:21
**story** [1] - 28:20
**straight** [2] - 6:2, 25:24
**Street** [2] - 11:24, 12:11
**stretch** [1] - 19:1
**strong** [1] - 8:22

**study** [1] - 9:24
**sudden** [1] - 25:14
**suggestion** [1] - 44:3
**Suite** [1] - 1:17
**summary** [32] - 3:14, 4:8, 4:12, 5:17, 7:1, 7:20, 10:15, 11:2, 13:20, 15:8, 20:23, 22:1, 24:3, 24:22, 27:6, 28:9, 30:12, 35:24, 36:2, 36:3, 36:11, 36:17, 37:23, 38:13, 38:14, 38:20, 42:13, 42:16, 42:20, 43:4, 43:7, 43:8
**Summary** [2] - 7:24, 19:8
**SUMMARY** [1] - 1:8
**Sunday** [2] - 10:6, 10:22
**Sundays** [1] - 34:18
**Supp** [1] - 37:25
**support** [3] - 7:24, 24:7, 37:24
**supported** [4] - 6:18, 30:18, 30:21, 35:25
**supposed** [1] - 14:16
**Surfside** [3] - 11:24, 12:18, 34:3
**surgery** [1] - 2:22
**sworn** [2] - 20:25, 24:2

**T**

**table** [1] - 39:14
**talks** [1] - 44:9
**ten** [2] - 2:20, 35:11
**tend** [2] - 30:1, 36:9
**terms** [1] - 18:17
**testified** [2] - 15:10, 35:7
**testify** [1] - 35:12
**testifying** [1] - 7:6
**testimony** [16] - 7:2, 7:13, 7:14, 9:25, 13:10, 16:24, 17:1, 19:19, 20:25, 22:21, 22:22, 24:2, 24:7, 24:15, 24:18
**THE** [32] - 1:9, 1:11, 1:15, 2:2, 2:7, 2:12, 2:16, 3:13, 3:20, 3:24, 4:2, 8:8, 26:16, 27:10, 29:11, 31:1, 31:4, 31:10, 33:1, 33:8, 33:11, 33:18, 34:17, 35:1, 41:23, 43:5, 43:12, 43:18, 43:23, 44:13, 44:19, 44:21
**theory** [2] - 37:8, 37:9
**third** [4] - 5:8, 34:8, 36:17, 37:5
**three** [19] - 5:1, 11:13, 11:14, 12:5, 12:7, 12:10, 15:11, 15:14, 15:15, 17:24, 27:20, 32:7, 32:9, 32:11, 34:3, 37:1, 38:13, 41:24
**three-bedroom** [1] - 37:1
**throughout** [1] - 25:5
**tier** [2] - 5:4, 5:8
**tiers** [1] - 5:1
**tired** [1] - 33:12
**today** [1] - 27:14
**Tompkins** [1] - 29:15
**took** [1] - 33:24
**top** [1] - 13:14
**total** [1] - 31:5
**Towers** [1] - 1:16
**transcript** [2] - 8:21, 36:20
**transcription** [1] - 45:5
**Trask** [10] - 6:20, 6:22, 17:1, 17:6, 17:7, 17:10, 17:18, 19:11, 31:7, 32:16
**Trask's** [2] - 19:6, 19:19
**trial** [9] - 2:13, 2:14, 2:16, 2:17, 3:17, 43:7, 43:25, 44:6, 44:14
**tried** [2] - 3:11, 40:2
**trigger** [1] - 24:11
**truly** [1] - 12:14
**try** [3] - 30:24, 31:12, 43:21
**trying** [4] - 5:13, 19:20, 28:17, 40:1
**turn** [3] - 15:2, 35:16, 43:17
**TV** [1] - 19:13
**two** [33] - 2:18, 3:4, 9:21, 10:17, 11:14, 12:4, 12:7, 12:23, 13:6, 14:6, 26:10, 27:22, 29:7, 29:9, 31:17, 31:20, 31:24, 32:5, 32:6, 33:22, 33:23, 34:3, 34:7, 34:8, 37:3, 37:4, 37:19, 41:17, 41:19, 43:24, 43:25
**two-week** [1] - 43:25
**type** [1] - 22:23
**typically** [1] - 36:23

**U**

**U.S** [1] - 37:25
**uncontested** [1] - 6:18
**Under** [1] - 30:4
**under** [13] - 4:22, 5:15, 12:25, 19:2, 22:11, 23:10, 26:13, 28:6, 28:15, 36:1, 38:15, 40:10, 43:6
**undercover** [1] - 40:24
**underscore** [2] - 22:16, 25:10
**undisputed** [1] - 29:24
**uneasy** [1] - 11:7
**unequivocal** [1] - 28:21
**unfortunately** [1] - 11:6
**unintended** [1] - 28:18
**uninterrupted** [10] - 23:8, 23:17, 23:18, 23:20, 24:6, 25:4, 25:6, 33:14, 42:8, 43:2
**united** [1] - 1:21
**United** [2] - 36:14, 45:9
**UNITED** [2] - 1:1, 1:9
**unless** [1] - 30:17
**unrebutted** [1] - 30:10
**untimely** [1] - 28:14
**up** [23] - 3:15, 8:23, 10:6, 11:12, 11:13, 11:14, 12:19, 13:4, 15:19, 15:22, 16:5, 16:18, 18:7, 20:11, 23:23, 30:25, 31:1, 31:4, 35:11, 35:21, 43:6, 44:12, 44:15
**usage** [1] - 18:20
**uses** [2] - 25:18, 25:22

**V**

**VELAZCO** [2] - 1:20, 45:8
**Velazco** [1] - 45:8
**versus** [5] - 2:3, 36:14, 37:25, 38:2, 38:11
**view** [1] - 24:19
**vigilant** [3] - 10:12, 10:16, 10:17

volume [1] - 8:19
voluntary [1] - 28:21
volunteered [1] - 28:24
vs [1] - 1:5

**W**

wake [7] - 8:23, 11:12, 15:19, 15:22, 16:5, 35:10, 35:21
waking [1] - 10:6
walk [1] - 33:6
wall [2] - 14:12, 14:17
wants [1] - 8:4
watch [2] - 19:13, 26:20
water [4] - 8:25, 15:17, 16:3
wee [1] - 10:9
week [17] - 2:13, 2:18, 2:20, 2:21, 5:2, 5:6, 5:9, 5:11, 5:21, 6:16, 13:1, 22:11, 22:19, 25:13, 32:22, 43:25
week-by-week [1] - 13:1
weeks [1] - 43:24
well-schooled [1] - 42:19
Westlaw [1] - 38:5
whatsoever [1] - 30:14
white [1] - 14:17
window [1] - 39:20
witness [1] - 7:15
witnesses [1] - 38:24
wood [1] - 16:23
word [9] - 10:2, 10:11, 10:12, 10:24, 13:24, 24:9, 24:11, 24:17
words [3] - 10:16, 10:17, 18:20
worker [7] - 6:16, 22:14, 23:19, 24:20, 25:22, 27:23
workers [5] - 4:18, 4:22, 5:9, 20:17, 25:12
works [6] - 5:5, 22:18, 24:20, 26:12, 28:4, 40:23
worry [1] - 43:7
written [2] - 24:16, 28:19
wrote [1] - 29:22

**Y**

year [2] - 11:25, 12:17
yell [1] - 16:1
younger [4] - 31:24, 35:19, 35:20, 35:21
youngest [8] - 9:21, 12:23, 13:6, 29:8, 29:9, 31:17, 33:23, 34:7

**Z**

zabogado@aol.com [1] - 1:13
ZIDELL [11] - 1:11, 2:5, 2:15, 3:22, 4:1, 4:3, 8:10, 26:18, 41:25, 43:14, 44:7
Zidell [22] - 1:12, 2:5, 2:23, 3:5, 3:10, 3:12, 3:21, 4:1, 27:15, 28:19, 28:24, 29:22, 31:13, 31:23, 32:3, 36:20, 36:25, 37:9, 37:13, 37:17, 41:24, 43:21