United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Maria Eugenia Blanco, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 21-24023-Civ-Scola |
| Anand Adrian Samuel and Lindsey Adams Finch, Defendants. | ) |

## Order Entering Summary Judgment

Plaintiff Maria Eugenia Blanco seeks the recovery, from Defendants Anand Adrian Samuel and Lindsey Adams Finch (together, the "Parents"), of overtime payments she says she is due under the Fair Labor Standards Act for her work for them as a nanny/housekeeper. (Compl, ECF No. 1-1.) Blanco says that, from January 2019 through August 2021, she worked 79 hours a week in the Parents' home, caring for their children, and was paid only her regular, hourly rate for all hours worked, without receiving time-and-half overtime payments for all hours worked in excess of forty each week.

Previously, the Court denied Blanco's motion for summary judgment, concluding she failed to establish her entitlement to summary judgment regarding (1) her claim for overtime wages, (2) whether the Parents are her employers under the FLSA, and (3) her claim for liquidated damages. (Order, ECF No. 82.) Within that order, the Court also noted that, although the Parents had not themselves moved for summary judgment, they pointed out that Blanco's own statement of material facts demonstrates there are no issues of material fact regarding the applicability of the overtime exemption to Blanco's domestic position. Consequently, argued the Parents, the Court should enter summary judgment under Federal Rule of Civil Procedure 56(f)(1).[1] Finding merit in the Parents' position, the Court set the matter for oral argument, "to allow Blanco to explain why, based on the facts presented, the Court should not enter summary judgment in the Parents' favor." (Order at 10.) After granting Blanco's motion for a continuance of that hearing, the Court heard the parties' arguments on August 23, 2022. Based on the parties' presentations at that hearing and the record in this case, the Court, for the following reasons, grants summary judgment, in favor of the Parents, under Rule 56(f).

As found by the Court, in its previous order, the FLSA exempts from overtime entitlement, (1) "any employee who is employed in domestic service," (2) "in a household," and (3) "who resides in such household." 29 U.S.C. §

---

[1] Under Rule 56(f), a court may, "[a]fter giving notice and a reasonable time to respond," "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

213(b)(21). In turn, Department of Labor regulations and interpretive guidance explain that this live-in, domestic-service exemption can apply not only when the employee resides on the employer's premises "permanently," but also when the employee resides there for "extended periods of time." Application of the Fair Labor Standards Act to Domestic Service, 29 C.F.R. Part 552, 78 FR 60,454, 60,474 (Oct. 1, 2013) ("2013 Final Rule"); *see also* 29 C.F.R. § 785.23. In turn, an employee is considered to reside on an employer's premises for "extended periods of time" if the employee spends "five consecutive days or nights" "working and sleeping on the employer's premises." 2013 Final Rule, 78 FR at 60,474.

As the Court pointed out in its order, the fully developed evidentiary record here shows that:

(1) Blanco worked as a full-time domestic employee from 2019 through 2021 (*e.g.*, Pl.'s Stmt. of Facts ¶ 1, ECF No. 47);

(2) Blanco worked fewer than 120 hours each week (*e.g., id.* ¶ 58);

(3) Blanco stayed at the Parents' residence for five consecutive nights each week (*e.g., id.* ¶¶ 9, 58); and

(4) Blanco slept and studied English during her shifts (*e.g., id.* ¶¶ 7, 78; Blanco Dep., ECF No. 43-4, 70:16–71:2, 71:9–11; Pl.'s Mot. for Summ. J., ECF No. 45, 2, 7; Pl's Reply, ECF No. 58, 4).

Because the evidentiary record was complete, the Court could have simply entered summary judgment at that point, without affording Blanco an opportunity to be heard. *Lance Toland v. Phoenix Ins. Co.*, 20-10999, 2021 WL 1200263 (11th Cir. Mar. 30, 2021) ("[W]hen a legal issue has been fully developed and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided.") (cleaned up). The legal issue regarding the relevant overtime exemption was fully aired during summary-judgment briefing. And, the facts, on this fully developed record, show that Blanco was exempt from entitlement to overtime: she was a domestic employee, who worked fewer than 120 hours each week, stayed overnight for five consecutive nights each week, and slept during her shifts. The issue, then, was ripe for determination at that time.

In an abundance of caution, however, the Court set the matter for oral argument. During that hearing, part of Blanco's approach involved urging the Court to reconsider its legal assessment and analysis of the exemption provision. The Court finds Blanco's argument in this regard unavailing. The hearing was not an invitation to the parties to reargue the legal conclusions supporting the Court's order denying Blanco's motion for summary judgment.

Failing that, Blanco's strategy involved highlighting what she urges are crucial parts of Blanco's her testimony that were not referenced in the Court's

summary-judgment order. These excerpts include details relating to what Blanco's nighttime responsibilities were: finishing her housekeeping tasks; giving a bottle to the baby at 1:00 am; changing one child's diaper; making sure the children were covered as they slept; lowering the music volume; calming one of the children down by giving her massages and water; remaining alert "to make sure that nothing would happen" so that the Parents could sleep; and attending to the girls who would awaken up to three or four times a night. (Blanco Dep. at 67:7–68:6; 82:10–13.) Other excerpts Blanco pointed to include her denials of ever sleeping at all while on shift. (*E.g.*, *id.* at 68:7–10 (explaining "she did not sleep"); 70:18–19 ("I would not sleep. I would be in alert mode."); 70:25–71:2 ("always alert regarding the girls"); 73:21–23 (explaining the difference between sleeping, which she says would not do, and being "in a[n] alert stage or vigilant," as she says she was during her entire shift); 74:8–12 (insisting she would go twenty-seven hours without sleep, from Sunday mornings until Monday afternoons); 74:12 ("I never slept."); 104:19–20 ("I did not sleep. Where I would rest. Always alert.") According to Blanco, this testimony creates a genuine issue of material fact, defeating the entry of summary judgment in the Parents' favor. The Court disagrees.

 Throughout Blanco's briefing, including her statement of material facts, she has repeatedly asserted that she slept during her shifts and that, in fact, sleeping was the very nature of what she was being paid, in part, to do. In her motion for summary judgment, Blanco says she "always slept with the Defendants' daughters" (Pl.'s Mot. at 2) while on shift and that her "night-shift job's essential requirements involved her sleeping in a bedroom with the Defendants['] two youngest daughters" (*id.* at 7). Again, in her reply, in support of that motion, Blanco pointedly maintains that "she was a night[-]shift nanny whose job was *specifically to sleep* and tend to the children." (Pl.'s Reply at 3–4 (emphasis added).) Consistent with her briefing, Blanco also presented as undisputed material facts the following: she "always slept with the Defendants' 2 youngest daughters at the Froude home" and "slept in a room with all of the Defendants children" at the Harbor House condo (Pl.'s Stmt. ¶ 7); her "'sleep time' with Defendants' children is compensable time" (*id.* ¶ 78); and she "never complained of lack of sleep as that was specifically one of the things she was hired for – to sleep with and tend to the Defendants children during the night shift" (Pl's Reply Stmt. ¶ 115).

 And, indeed, Blanco's representations about her sleeping during her shift is amply supported by the record. For instance, Blanco herself admitted sleeping during her shifts, in her deposition: she could not say that she "never" slept at the house (Blanco Dep. at 70:22–24); she sometimes "enter[ed] into a sleep[-]like state" (*id.* at 70:25–71:1); and sometimes "the baby would wake [her] up because she would scream" (*id.* at 67:15 – 17). Further, she also

acknowledged that, at night, while she was in the bedroom with the girls, the lights were out; the only furniture available to her in the room was a bed; and, sometimes—despite the floors and doors creaking—the children would manage to sneak out of bed and go to their parents' bedroom. (*Id.* at 104:22–23; 106:12–13; 107:18–23; 133:19–134:10.) Other witness testimony is in accord. Another nanny, Grace Trask, maintained that Blanco "would always sleep . . . in the bedroom during the nightshift," "every single night." (Trask Dep. 42:10–19, ECF No. 43-5; *see also id.* at 47:4–7 (agreeing that "the younger two daughters always slept with Maria Blanco in the second bedroom"); 101:20–102:5 (agreeing that Blanco slept at theParents' resident five nights a week).) Yet another nanny, Adriana Gomez, testified similarly: confirming that Blanco would "always sleep with the two youngest daughters." (Gomez Dep. 57:16–19, ECF No. 43-6; *see also id.* at 77:10–12; 79:12–14 (saying Blanco "only comes at night and she sleeps with the girls"; 82:13–17 (confirming that Blanco worked and slept at the residence five consecutive days). Samuel also testified that Blanco "was definitely sleeping in the home five nights a week" and that Blanco "would usually wake up at seven, maybe a little bit before seven." (Samuel Dep. 86:20–21; 89:4–6, ECF No. 43-1.) In a declaration he further attested to hearing, from outside the bedroom door, Blanco's snoring before he himself went to bed between midnight and 1:00 am. (Samuel Decl. ¶ 26, ECF No. 53-2; *see also* Finch Decl. ¶ 28, ECF No. 53-3 (describing listening outside the bedroom door where Blanco slept, in the early morning hours: "Everyone was asleep, including Ms. Blanco, who snored. If Ms. Blanco had been active, I could easily have heard her.").) Samuel also described Blanco as a very heavy sleeper, not responding on two or three occasions when he returned home at midnight, locked out, and had to ring the doorbell, call her cell phone, and then finally bang on her bedroom window before she would wake up to let him in. (Samuel Decl. ¶ 35.) On another occasion, Samuel said he had to pound on Blanco's bedroom door when the smoke detector went off, blaring, to get her to wake up. (*Id.*)

     Finally, during an oral argument regarding a discovery dispute, before United States Magistrate Judge Jonathan Goodman, Blanco's lawyer underscored Blanco's admission about sleeping during her shift. In response to the Court's question, seeking clarification as to the "factual pattern," Blanco's attorney affirmed that Blanco "would typically in the evenings sleep in the same bedroom with the minor children." (Hr'g Tr. 9:3–8, ECF No. 43-14.) Expounding, the attorney confirmed that, indeed, Blanco's very job was "to basically sleep with [the children] in the room" and that Blanco "was supposed to be sleeping unless the kids woke up" for some reason." (*Id.* at 9:18–10:13.)

     In sum, these admissions together—or even separately—remove any genuine dispute as to whether Blanco slept during her shifts. First, under Local

Rule 56.1(a)(1), by asserting in her statement of material facts, and reply statement, that she slept with the children during her shifts and that, in fact, sleeping was the very activity she was hired to do, Blanco has established this fact as not genuinely disputed. L.R. 56.1(a)(1) (by listing a fact in a statement of material facts, the movant "contends [those facts] are not genuinely disputed"). Further, Blanco's statements, as detailed above, are both (1) amply supported by the record and (2) uncontroverted—actually, embraced—by the Parents. This alone is sufficient for the Court to deem this fact undisputed.

But, additionally, Blanco in her briefing and, through her lawyer, during oral argument, has repeatedly affirmed sleeping during her shifts. The Court considers Blanco's counsel's statements during oral argument before Judge Goodman binding judicial admissions: the statements were unequivocal and unambiguous. *See Starbuck v. R.J. Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1233 (M.D. Fla. 2018) ("To be binding, a judicial admission must be 'unequivocal' and 'unambiguous.'") (quoting *Crowe v. Coleman,* 113 F.3d 1536, 1542 (11th Cir. 1997)). Accordingly, without more, these facts "are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009). Further, "[t]he Eleventh Circuit generally applies judicial admission doctrine to the parties' representations of fact in court filings." *Starbuck*, 349 F. Supp. 3d at 1233. Based on Blanco's factual averments, set forth in her summary-judgment briefing, the Court and the Parents alike are "entitled to rely on" her representations of sleeping during her shifts "and to believe, given that concession, that no further evidence on the issue [is] needed." *I.L. v. Alabama*, 739 F.3d 1273, 1284 (11th Cir. 2014). Although Blanco has pointed to some record evidence that could be read to be in conflict with the admission, she has "offered no valid reason why [she] should be allowed to backtrack on this factual concession now." *Id.*

In sum, then, for the reasons set forth above, as well as in the Court's order denying Blanco's motion for summary judgment, and for the reasons stated on the record during the August 23, 2022, hearing, the Court **grants summary judgment in favor of the Parents**.

The Clerk is directed to **close** this case. Any pending motions are **denied as moot**. A separate judgment will follow.

**Done and ordered** at Miami, Florida, on October 6, 2022.

_____
Robert N. Scola, Jr.
United States District Judge